# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Vanguard Healthcare, LLC, | ) | Case No. 16-03296 |
| Vanguard Healthcare Services, LLC | ) | |
| Vanguard Financial Services, LLC | ) | |
| Aurora Australis, LLC | ) | |
| Boulevard Terrace, LLC | ) | |
| Eldercare of Jackson County, LLC | ) | |
| Elderscript Services, LLC | ) | |
| Glen Oaks, LLC | ) | |
| Palace RBS, LLC | ) | |
| Shady Lawn, LLC | ) | |
| Vanguard of Ashland, LLC | ) | |
| Vanguard of Church Hill, LLC | ) | |
| Vanguard of Crestview, LLC | ) | |
| Vanguard of Manchester, LLC | ) | |
| Vanguard of Memphis, LLC | ) | |
| Vanguard of Ripley, LLC | ) | |
| Vicksburg Convalescent, LLC | ) | |
| Whitehall OpCo, LLC | ) | |
| | ) | |
| Six Cadillac Dr., Suite 310 | ) | |
| Brentwood, TN  37027 | ) | |
| Debtors. | | |

## MOTION OF THE DEBTORS FOR AN ORDER (A) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION (I) WAGES AND SALARIES,  (II) REIMBURSABLE EMPLOYEE EXPENSES AND (III) EMPLOYEE MEDICAL AND SIMILAR BENEFITS AND (B) AUTHORIZING AND DIRECTING BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS

Vanguard Healthcare, LLC and the above Debtors (the "Debtors" or "Vanguard") as Debtors

in possession, hereby move this Court (the "Motion") for the entry of an order pursuant to Sections

363(b), 507(a)(3) and (a)(4), and 105(a) of Title 11 of the United States Code (the "Bankruptcy

Code"), authorizing the Debtors to pay prepetition (i) wages and salaries; (ii) reimbursable employee

expenses; (iii) employee medical and similar benefits, and authorizing and directing banks and other financial institutions to honor all related checks and electronic payment requests. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are Sections 105(a), 363, 507(a)(7) and 1129(a)(9) of the Bankruptcy Code.

## BACKGROUND

3.      On May 6, 2016 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

4.      The Debtors continue to operate their business and manage their properties as Debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee, trustee or examiner has been appointed in this case at this time.

5.      Vanguard is a long-term care provider headquartered in Brentwood, Tennessee, providing rehabilitation and skilled nursing services at 14 facilities in four states (Florida, Mississippi, Tennessee and West Virginia). The organizational structure of the company includes a parent entity/holding company (Vanguard Healthcare, LLC), and numerous subsidiaries which serve as either operating companies, property ownership companies, or management and support companies for the various facilities. Seven of the facilities are leased from entities which are not subsidiaries of Vanguard Healthcare, three are owned by property ownership subsidiaries of Vanguard Healthcare and leased to separate operating subsidiaries of Vanguard Healthcare while the

other four are both owned and operated by subsidiaries of Vanguard Healthcare.

6.      All 14 facilities are financed pursuant to certain mortgages and other loan documents with Healthcare Financial Solutions, LLC, as successor agent to General Electric Capital Corporation.   Healthcare Financial Solutions operates as a subsidiary of Capital One, N.A. According to recent press releases, Capital One acquired General Electric Capital Corporation's Healthcare Financial Services lending business in December, 2015, and combined that business with Capital One's existing healthcare banking business to form Capital One Healthcare.

## SUMMARY OF RELIEF REQUESTED

7.      By this Motion, the Debtors request that this Court enter an order, pursuant to Sections 363 and 105(a) of the Bankruptcy Code, (i) authorizing the Debtors to continue payment of prepetition wages and salaries, reimbursable employee expenses and employee benefit programs in the ordinary course of business and to pay other costs and expenses relating to the foregoing as described more fully below, (ii) authorizing the Debtors to continue to honor their practices, programs and policies with respect to the Employees, as defined below, as such practices, programs and policies were in effect as of the Petition Date, with authorization to pay the employee obligations that become due and owing during the pendency of these cases, and (iii) authorizing and directing disbursement banks to receive, process and pay any and all checks drawn on the Debtors' payroll accounts, and automatic payroll transfers to the extent that such checks or transfers relate to any of the foregoing.

8.      The Debtors seek this authorization because the employees are essential to the continued operation of the Debtors' business and, absent an order granting the relief requested by this Motion, the employees will suffer undue hardship and, in many instances, serious financial

difficulties, as the amounts in question are needed to enable the Employees to meet their own personal financial obligations. Moreover, the Debtors believe that, without the requested relief, the continued operation of the Debtors' business will be undermined and value to the estate will be irreparably harmed. The commencement of this Chapter 11 case will likely create employee anxiety, and the requested relief is critical to stabilizing these concerns.

## THE DEBTORS' EMPLOYEES

9.     As of the Petition Date, the Debtors employ 1672 employees ("Employees") divided among the Debtors as set forth Exhibit A. Approximately 1514 Employees are paid hourly and 158 are on salary. From time to time, the Debtors also employ temporary employees (the "Temporary Employees") through various temporary agency services.

10.     The Employees perform a variety of critical functions, including without limitation, licensed nursing care, dietary services, management, marketing, maintenance, repair and other tasks. The Employees' skills and their knowledge and understanding of the Debtors' operations, customer relations and infrastructure are essential to the effective operation of the Debtors' business and ensuring quality of care to the patients at the Debtors' facilities.

11.     To minimize the personal hardship that the Employees would suffer if prepetition employee-related obligations are not paid when due or as expected and maintain morale and stability in the Debtors' workforce during this critical time, the Debtors, by this Motion, seek authority to pay and honor certain prepetition claims for, among other amounts, wages, salaries, bonuses and other compensation, severance payments, federal and state withholding taxes and other amounts withheld (including, garnishments, employees' share of insurance premiums, taxes and 401(k) contributions), health benefits, insurance benefits, workers' compensation benefits, vacation time, sick leave, life

and accidental death and dismemberment insurance, short- and long-term disability coverage and all other benefits that the Debtors have historically provided in the ordinary course of business (collectively, and as more fully described below, the "Employee Wages and Benefits") and to pay all costs incident to the foregoing. The Debtors also seek authority to continue all Employee Wages and Benefits post-petition. In addition, the Debtors request the right to modify, change and discontinue any of the Employee Wages and Benefits, and the policy related to reimbursable expenses, and to implement new Employee Wages and Benefits in the ordinary course of business during this Chapter 11 case without the need for further Court approval, so long as such action does not materially increase any Employee Wages and Benefits.

## EMPLOYEE OBLIGATIONS

### A.     Unpaid Compensation

12.     In the ordinary course of business, the Debtors incur payroll obligations to the Employees. Such obligations are generally comprised of wages and salaries. All Employees are paid every two weeks.

13.     All payrolls are funded prior to the payment date by wiring the required funds to ADP, which provides the payroll outsource services for the Debtors. On each biweekly payday, ADP pays Employees by check or automated clearing house deposits in Employees' accounts.

14.     On May 4, 2016, the Debtors wired $1,434,395.25 to ADP for the May 6, 2016 payroll. On May 5, 2016, the Debtors wired approximately $567,000.00 to ADP to cover taxes and other withholdings related to the May 6, 2016 payroll. The next date to wire funds for payroll is May 18, 2016, at which time approximately $1,300,000.00 will be needed by the Debtors to pay the

biweekly payroll on May 20, 2016.  On May 19, 2016 the Debtors will need approximately $476,000.00 to pay the taxes and other withholdings related to the May 20, 2016 payroll.

15.     One Debtor facility, Palace RBS, LLC, is managed under contract by Consulate Health Care, which also manages the payroll for the Employees of Palace RBS.  These Employees are paid biweekly on the same schedule that all other Employees are paid.  The week of payroll Consulate Health Care will request that Vanguard Healthcare transfer the amounts necessary for payroll and withholdings for Employees.  For the May 6, 2016 payroll, Vanguard Healthcare transferred approximately $91,000.00 to Consulate Health Care.  The Debtors anticipate that they will pay approximately $91,000.00 to Consulate Health Care to cover the May 20, 2016 payroll as well.

16.     Because all of the Employees are paid approximately two weeks in arrears, as of the Petition Date, Employees may not have been paid all of their prepetition wages.  Additionally, some Employees may be entitled to compensation because (a) discrepancies may exist between the amounts paid and the amounts that should have been paid, and (b) some payroll checks issued to Employees on or prior to the Petition Date may not have been presented for payment or may not have cleared the banking system and, accordingly, have not been honored and paid as of the Petition Date. Further, Temporary Employees may be entitled to compensation based upon the invoices submitted to the Debtors from the various temporary employment agencies.

17.     The Debtors estimate that, as of the Petition Date, approximately the full amount of the May 6, 2016 payroll ($2,130,000.00) is for wages, bonuses, benefits, and withholdings related to periods prior to the Petition Date (the "Unpaid Compensation").  The Debtors seek authority to pay prepetition amounts for Unpaid Compensation that were not otherwise paid to Employees on May 6,

2016. The Debtors assert that, as of the Petition Date, no Employee is owed more than $12,850.00 for Unpaid Compensation or other benefits.

**B.      Severance Program**

18.      In the ordinary course of business, the Debtors make severance payments to prior Employees (the "Severance Program"). The Debtors' human resources department has guidelines for approving Severance Payments based on an Employees' position, reason for termination, and length of employment.

19.      The Debtors do not owe any amounts under the Severance Program for Employees who were terminated prior to the Petition Date. However, the Debtors request authorization to continue the Severance Program post-petition in the ordinary course of business.

**C.      Deductions and Withholdings**

20.      During each applicable pay period, the Debtors routinely deduct certain amounts from paychecks, including, without limitation, (a) garnishments, child support and similar deductions and (b) other pretax and after-tax deductions payable pursuant to certain of the Employee benefit plans discussed herein (such as an Employee's share of health care benefits and insurance premiums, contributions under flexible spending plans, 401(k) contributions, legally ordered deductions and miscellaneous deductions) (collectively, the "Deductions"). The Debtors or ADP forward the amount of the Deductions to the appropriate third-party recipients. Each bi-weekly pay period approximately $104,000.00 is deducted from payroll for the benefit of Employees. Certain Deductions that were deducted from Employees' earnings may not have been forwarded to the appropriate third-party recipients prior to the Petition Date. Accordingly, the Debtors seek authority

to continue to forward all prepetition and post-petition Deductions to the applicable third-party recipients.

21.     Further, the Debtors are required by law to withhold from an Employee's wages amounts related to federal, state and local income taxes, social security and Medicare taxes for remittance to the appropriate federal, state or local taxing authority (collectively, the "Withheld Amounts").  The Debtors must then match from their own funds for social security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (the "Employer Payroll Taxes," and together with the Withheld Amounts, the "Payroll Taxes").  Prior to the Petition Date, the Debtors withheld the appropriate amounts from Employees' earnings for the Payroll Taxes and all such amounts have been remitted to the appropriate taxing authorities.  The Debtors pay approximately $476,000.00 each bi-weekly pay period approximately on account of Payroll Taxes.  Accordingly, the Debtors seek authority to continue to honor and process all prepetition and postpetition payments for Payroll Taxes.

**C.      Honoring Checks for, and Payment of, Reimbursable Expenses**

19.     Prior to the Petition Date, the Debtors reimbursed Employees for certain expenses incurred on behalf of the Debtors in the scope of their employment (the "Reimbursable Expenses").  The Reimbursable Expenses include, without limitation, certain travel expenses and expenses for maintaining cellular telephones that are used in the scope of employment.

20.     The Reimbursable Expenses were all incurred on the Debtors' behalf and with the understanding that they would be reimbursed.  Accordingly, to avoid harming Employees who incurred the Reimbursable Expenses, the Debtors request authority to (a) continue reimbursing the Reimbursable Expenses in accordance with prepetition practices, (b) modify their prepetition policies

relating thereto as they deem appropriate, and (c) pay all Reimbursable Expenses that (i) accrued prepetition and (ii) accrue postpetition but relate to the prepetition period.

**D.      Employee Benefits**

     **i.      Medical, Prescription Drugs, Dental/Vision and Flexible Spending Plans**

21.      The Debtors offer their Employees the ability to participate in a number of insurance and benefits programs, including health care and dental plans, vacation time and other paid leaves of absence, retirement savings plans, flexible benefit plans, and the other insurance plans more particularly described herein (collectively, the "Employee Benefits Plan").

22.      The Debtors' group health plan is a self-insurance plan through Vanguard Employee Health Benefit Plan, LLC that is administered by Cigna (the "Medical Plan"). The Debtors and Employees share the costs of premiums for the Medical Plan. The Debtors' monthly share of Medical Plan premiums is approximately $278,000.00. The Medical Plan costs the Debtors approximately $500,000.00 per month in gross claims and approximately $28,000.00 per month in administrative fees to Cigna and brokerage fees to Cowan. The Debtors maintain excess insurance through Munich to cover any medical expenses under the Medical Plan that exceed $1,000,000.00 per year per Employee (the "Stop Loss Insurance"). The Debtors pay an average total monthly premium of $12,337.00 per month for the Stop Loss Insurance.

23.      The Debtors offer dental and vision plans (the "Dental and Vision Plans") to Employees that are Employee paid and administered by Cigna. The Debtors do not pay any amounts to maintain the Dental and Vision Plans.

24.      Employees may also elect to make contributions to Health Savings Accounts and Flexible Spending Accounts that are administered by ADP. The Debtors pay approximately

$2,800.00 per month for ADP to administer the Health Savings Accounts and Flexible Spending Accounts.

25. Other benefits that are available to the Employees through Colonial Life on an employee paid basis are term life insurance, universal life insurance, short-term disability insurance, accidental death insurance, cancer insurance, and critical illness insurance.

26. Prior to the Petition Date, the Debtors may have incurred certain administrative obligations to the third party administrators, which have not yet been paid. In addition, prior to the Petition Date, certain Employees filed claims under the Medical Plan, which have not yet been paid.

27. By this Motion, the Debtors seek authority to (a) continue the Medical Plan, the Dental and Vision Plans, the Health Savings Accounts and Flexible Spending Accounts, and all employee paid plans in the ordinary course of business, (b) continue making the above-described contributions to such benefit programs, (c) pay any amounts related thereto, including on account of any premiums and claim amounts, to the extent that they remain unpaid as of the Petition Date and (d) maintain the Stop Loss Insurance.

**ii.  Workers' Compensation**

28. Prior to the Petition Date, the Debtors provided workers' compensation insurance for their Employees at the statutorily-required level for each state (the "Workers' Compensation Program"). These benefits are currently provided for Employees with coverage through United Heartland. The United Heartland policy provides full coverage for all workers compensation claims. The Debtors pay approximately $304,000.00 per quarter for the United Heartland Policy.

29. Certain benefits and obligations under the Workers' Compensation Program have been incurred prepetition but have yet to be fully paid, and certain other claims were filed prepetition but have yet to be resolved. By this Motion, the Debtors request authority to continue and maintain

their Workers' Compensation Program in the ordinary course of business and to pay any and all prepetition and postpetition amounts related thereto including, without limitation, any payments for workers' compensation claims, premiums and fees owed for administrative costs and other amounts required in connection with the Workers' Compensation Program, as such amounts become due in the ordinary course of the Debtors' business.

### iii.     Paid Time Off and Other Leaves of Absence

30.     The Debtors provide their Employees with a paid time-off benefit that allows the Employee to take time off from work for vacation, illness or personal time with pay ("PTO").  The amount of PTO available to a particular Employee and the rate at which such PTO accrues is generally determined by the Employee's position and the length of full-time employment.  When an Employee elects to take PTO, the Employee is paid his or her regular hourly or salaried rate. Employees may carryover up to 80 hours of unused PTO from one year to the next.  Any hours in excess of 80 remaining with the Employee on December 31 of the given year will be forfeited. Employees may not be paid in lieu of using their PTO.  Employees who voluntarily cease their employment with the Debtors, provide two weeks' notice, and work through the two week notice period, are eligible to be paid for PTO hours they have accumulated up to the last day worked.

31.     In addition, in the ordinary course of business, the Debtors allow their Employees to take certain other leaves of absence which are required by law, such as under the Family Medical Leave Act and Americans with Disabilities Act ("Leaves of Absence").

32.     By this Motion, the Debtors request that they be authorized to continue to honor their PTO and Leaves of Absence policies in the ordinary course of business, and to honor and pay any prepetition amounts related thereto.  In this regard, even in the event Employees utilize accrued

prepetition PTO and Leaves of Absence in the ordinary course of business, those events will not create any material cash flow requirements beyond the Debtors' normal payroll obligations.

### iv.    Employee Savings and Retirement Plans

33.    The Debtors maintain a retirement savings plan meeting the requirements of Section 401(k) of the Internal Revenue Code for the benefit of certain Employees (the "401(k) Plan") that is administered by The Retirement Plan Company.  The 401(k) Plan allows for automatic pre-tax salary deductions of eligible compensation up to the limits set by the Internal Revenue Code.  Employees may contribute to the 401(k) Plan after three months of service with the Debtors (the "Participants").  After six months of employment, the Debtors provide a 30% match of Employee contributions up to 3% of the Employee's compensation.  The Debtors estimate that matching contributions under the 401(k) Plan cost approximately $3,500.00 per bi-weekly pay period.

34.    By this Motion, the Debtors seek authority, to pay any prepetition and post-petition matching contributions due and owing under their 401(k) Plan.

### v.    Life and AD&D Insurance

35.    The Debtors provide Employees who participate in the Medical Plan primary life insurance coverage and primary accidental death and dismemberment insurance through Cigna (the "Life and AD&D Insurance").  This coverage costs the Debtors approximately $3,400.00 per month.

36.     By this Motion, the Debtors seek authority to continue making the above-described contributions for the Life and AD&D Insurance and pay any amounts related thereto, including on account of any premiums and claim amounts, to the extent that they remain unpaid on the Petition Date.

## RELIEF REQUESTED

37.     By this Motion, the Debtors seek authority to pay and honor, in the ordinary course of business, prepetition and postpetition claims and obligations related to (a) Unpaid Compensation and Severance Payments, (b) Deductions and Payroll Taxes, (c) Reimbursable Expenses, and (d) the Employee Benefit Programs, all as defined and described in more detail herein.

38.     In addition, the Debtors request that banks and other financial institutions be authorized and directed to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date.  The Debtors also request that all such banks and financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion.

## BASIS FOR RELIEF

**A.      Sufficient Cause Exists for the Court to Authorize the Debtors to Honor Employee Wage and Benefit Obligations**

39.     Pursuant to Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, the Debtors' obligations for the Employee Wages and Benefits are entitled to priority treatment.  Therefore, the relief sought herein would only affect the timing, and not the amount, of the payment of the Employee claims to the extent they constitute priority claims.  Additionally, the Debtors may pay to the appropriate entities the Deductions and Payroll Taxes because those amounts are not property of the Debtors' estate under Section 541 of the Bankruptcy Code.  The Court may also authorize the Debtors to honor its obligations for the Employee Wages and Benefits pursuant to Section 363(b)(1) of the Bankruptcy Code.  See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989)

(affirming lower court order authorizing payment of prepetition wage claims pursuant to Section 363(b) of the Bankruptcy Code). To do so, "the Debtors must articulate some business justification, other than the mere appeasement of major creditors." Id. at 175. In addition, Section 105(a) of the Bankruptcy Code provides the legal basis for the Court to authorize payment of prepetition claims out of necessity. See Ionosphere Clubs, 98 B.R. at 175-176 (citing Miltenberger v. Logansport, C. & S.W. R.Co., 106 U.S. 286 (1882)). Section 105(a) of the Bankruptcy Code authorizes a court to "permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the Debtors." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); see also In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999); In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this [fiduciary] duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

40. Paying prepetition employee benefits and wages will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption. Indeed, the Debtors assert that without the requested relief, their Employees may seek alternative employment opportunities, perhaps with the Debtors' competitors. Such a development would deplete the Debtors' workforce, hindering the Debtors' ability to meet its obligations to patients at the facilities and successfully complete a plan of reorganization. The loss of valuable Employees would be distracting at this critical time. Accordingly, the Debtors must do their utmost to retain their workforce by, among other things, continuing to honor all wage, benefit and related obligations, including the Employee Wages and Benefits that accrued prepetition.

41. Moreover, the Debtors seek authority to honor their obligations for the Employee Wages and Benefits to ensure the continued operation of the Debtors' business and to maintain the morale of their Employees, many of whom would suffer extreme personal hardship and financial

difficulty if they are not paid. In addition, the Employee Benefit Programs are an important part of each Employee's total compensation. The Debtors estimate that the aggregate cost of providing the Employee Benefit Programs pales in comparison to the value generated by the Debtors' workforce. Moreover, as with nonpayment of wages or reimbursable expenses, any indication that the Employee Benefit Programs may disappear or may not be honored will prove detrimental to the Debtors' ability to successfully reorganize under Chapter 11 of the Bankruptcy Code.

42.     The Debtors do not at this time seek to assume any executory contracts or obligations, and the Motion should not be deemed to be an assumption or adoption of any Employee agreements or policies. Rather, the Debtors merely seek to take steps that they believe to be necessary to keep their existing workforce intact to maximize the value of the bankruptcy estate for the benefit of all interested parties. Also, the Debtors will retain the discretion to not make the payments contemplated by the Motion for particular Employees, and nothing in the Motion shall, in and of itself, confer upon any Employees or other parties an entitlement to administrative priority or other preferences in distribution from the Debtors' estates.

**B.      Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers**

43.     Under the Debtors' existing cash management system, the Debtors represent that checks or wire transfer requests can be readily identified as relating to an authorized payment in respect of the prepetition claims of the Employees. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable banks and other financial institutions should be authorized and directed, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the prepetition claims of the Employees.

Case 3:16-bk-03296    Doc 5    Filed 05/06/16    Entered 05/06/16 14:27:43    Desc Main
                    Document      Page 15 of 24

44.     For all of the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of all parties in interest.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit B</u>, (a) authorizing the Debtors to pay certain prepetition amounts for (i) Unpaid Compensation and Severance Payments, (ii) Deductions and Payroll Taxes, (iii) Reimbursable Expenses, and (iv) the Employee Benefit Programs, (b) authorizing and directing banks and other financial institutions to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing, and (c) granting such other and further relief as is just and proper.

This 6th day of May, 2016.

RESPECTFULLY SUBMITTED:

*/s/ William L. Norton III*
William L. Norton III (TN 10075)
BRADLEY
1600 Division St., Suite 700
Nashville, TN 37203
Tel: (615) 252-2397
bnorton@bradley.com

*Attorney for Debtors*

**EXHIBIT A**

| Debtor | Facility | Address | Number of Beds | Hourly Employees | Salaried Employees | Total Employees |
|---|---|---|---|---|---|---|
| Aurora Australis, LLC | Aurora Health and Rehabilitation | 310 Emerald Drive Columbus, MS 39702 | 120 | 131 | 8 | 139 |
| Boulevard Terrace, LLC | Boulevard Terrace Rehabilitation and Nursing Center | 1530 Middle Tennessee Blvd. Murfreesboro, TN 37130 | 100 | 78 | 8 | 86 |
| Eldercare of Jackson County, LLC | Eldercare Health and Rehabilitation | 107 Miller Drive Ripley, WV 25271 | 120 | 106 | 11 | 117 |
| Elderscript Services, LLC | N/A – Pharmacy | Six Cadillac Drive, Suite 310 Brentwood, TN 37027 | N/A | 18 | 8 | 26 |
| Glen Oaks, LLC | Glen Oaks Health and Rehabilitation | 1101 Glen Oaks Road Shelbyville, TN 37160 | 130 | 96 | 7 | 103 |
| Palace RBS, LLC | The Palace Healthcare and Rehabilitation | 309 Main Street Red Boiling Springs, TN 37150 | 119 | 93 | 8 | 101 |
| Shady Lawn, LLC | Shady Lawn Health and Rehabilitation Center | 60 Shady Lawn Place Vicksburg, MS 39180 | 100 | 101 | 10 | 111 |
| Vanguard Financial Services, LLC | N/A – Central back office | Six Cadillac Drive, Suite 310 Brentwood, TN 37027 | N/A | 15 | 11 | 26 |

| Debtor | Facility | Address | Number of Beds | Hourly Employees | Salaried Employees | Total Employees |
|---|---|---|---|---|---|---|
| Vanguard Healthcare, LLC | N/A – Parent company | Six Cadillac Drive, Suite 310 Brentwood, TN 37027 | N/A | N/A | N/A | N/A |
| Vanguard Healthcare Services, LLC | N/A – Central back office | Six Cadillac Drive, Suite 310 Brentwood, TN 37027 | N/A | 1 | 15 | 16 |
| Vanguard of Ashland, LLC | Ashland Healthcare and Rehabilitation | 16056 Boundary Drive Ashland, MS 38603 | 60 | 65 | 6 | 71 |
| Vanguard of Church Hill, LLC | Church Hill Health Care and Rehab | 701 West Main Boulevard Church Hill, TN 37642 | 124 | 107 | 11 | 118 |
| Vanguard of Crestview, LLC | Crestview Health and Rehabilitation | 2030 25th Avenue North Nashville, TN 37208 | 111 | 84 | 7 | 91 |
| Vanguard of Manchester, LLC | Manchester Health Care Center | 395 Interstate Drive Manchester, TN 37355 | 120 | 114 | 7 | 121 |
| Vanguard of Memphis, LLC | Poplar Point Health and Rehabilitation | 131 North Tucker Street Memphis, TN 37355 | 169 | 160 | 12 | 172 |
| Vanguard of Ripley, LLC | Rest Haven Health and Rehabilitation | 103 Cunningham Drive Ripley, MS 38663 | 60 | 49 | 4 | 53 |
| Vicksburg Convalescent, LLC | Vicksburg Convalescent Center, LLC | 1708 Cherry Street Vicksburg, MS 39180 | 100 | 90 | 8 | 98 |

| Debtor | Facility | Address | Number of Beds | Hourly Employees | Salaried Employees | Total Employees |
|---|---|---|---|---|---|---|
| Whitehall OpCo, LLC | Whitehall Boca Raton | 7300 Del Prado South<br>Boca Raton, FL 33433 | 154 | 206 | 17 | 223 |
| | | TOTALS | 1587 | 1514 | 158 | 1672 |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Vanguard Healthcare, LLC, | ) | Case No. 16-03296 |
| Vanguard Healthcare Services, LLC | ) | |
| Vanguard Financial Services, LLC | ) | |
| Aurora Australis, LLC | ) | |
| Boulevard Terrace, LLC | ) | |
| Eldercare of Jackson County, LLC | ) | |
| Elderscript Services, LLC | ) | |
| Glen Oaks, LLC | ) | |
| Palace RBS, LLC | ) | |
| Shady Lawn, LLC | ) | |
| Vanguard of Ashland, LLC | ) | |
| Vanguard of Church Hill, LLC | ) | |
| Vanguard of Crestview, LLC | ) | |
| Vanguard of Manchester, LLC | ) | |
| Vanguard of Memphis, LLC | ) | |
| Vanguard of Ripley, LLC | ) | |
| Vicksburg Convalescent, LLC | ) | |
| Whitehall OpCo, LLC | ) | |
| | ) | |
| Six Cadillac Dr., Suite 310 | ) | |
| Brentwood, TN 37027 | ) | |
| Debtors. | | |

**ORDER (A) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION (I) WAGES, SALARIES, BONUSES AND OTHER COMPENSATION, (II) REIMBURSABLE EMPLOYEE EXPENSES AND (III) EMPLOYEE MEDICAL AND SIMILAR BENEFITS AND (B) AUTHORIZING AND DIRECTING BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

Upon the motion (the "Motion")[1] of the above-captioned Debtors for the entry of an order (a)

authorizing the Debtors to pay certain prepetition employee wages and benefits (collectively

---

[1] Unless otherwise defined, all capitalized terms shall have the meanings set forth in the Motion.

"Employee Wages and Benefits"), consisting of (i) accrued wages, salaries, severance payments and other compensation (the "Unpaid Compensation"), (ii) payroll deductions, including, without limitation, (a) garnishments, child support and similar deductions and (b) other pre-tax and after-tax deductions payable pursuant to certain of the Employee benefit plans discussed in the Motion (such as the Employee's share of health care benefits and insurance premiums, 401(k) contributions, legally ordered deductions and miscellaneous deductions) (collectively, the "Deductions") and the withheld amounts related to federal, state and local income taxes, social security and Medicare taxes and the Debtors matching amounts for social security and Medicare taxes and pay and additional amounts for federal and state unemployment insurance (the "Payroll Taxes"), (iii) certain work-related expenses incurred by the Employees on behalf of the Debtors (the "Reimbursable Expenses"), and (iv) amounts accrued in relation to the Debtors' health insurance and benefits programs, including health care, vision and dental plans, workers' compensation insurance, paid time off and other paid leaves of absence, retirement savings plans, flexible benefit plans, life insurance, accidental death and dismemberment insurance, short-term and long-term disability insurance and accident insurance (collectively, the "Employee Benefit Programs") and (b) authorizing and directing banks and other financial institutions to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing, and further upon the statements of counsel and the witnesses at the hearing; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion

having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED

1. The Motion is granted.

2. The Debtors are authorized to honor and pay the Employee Wages and Benefits in accordance with the Debtors' stated policies and prepetition practices, including, but not limited to, prepetition amounts owed in connection with Unpaid Compensation.

3. The Debtors are authorized to honor and pay all amounts due under the Severance Program in accordance with the Debtors' stated policies and prepetition practices, including, but not limited to, prepetition amounts owed in connection with the Severance Program, if any.

4. The Debtors are authorized to continue to allocate and distribute the Deductions and the Payroll Taxes in accordance with the Debtors' stated policies and prepetition practices.

5. The Debtors are authorized to pay the Reimbursable Expenses in accordance with the Debtors' stated policies and prepetition practices including, but not limited to, prepetition amounts owed in connection with Reimbursable Expenses.

6. The Debtors are authorized to honor the Employee Benefit Programs, make any necessary contributions to such programs and pay any unpaid premiums, claim or amount owed as of the Petition Date, including, but not limited to, honoring the following benefits defined in the Motion: (a) the Medical Plan; (b) the Dental and Vision Plans; (c) Health Savings Accounts and Flexible Spending Accounts; (d) Stop Loss Insurance; (e) Workers Compensation Program; (f) Paid Time Off and Leaves of Absence policies; (g) the 401(k) Plan; and (h) Life and AD&D Insurance.

7. In accordance with this Order and any other order of this Court, the Debtors are authorized to pay all processing fees associated with, and all costs incident to, payment of the Employee Wages and Benefits and the Reimbursable Expenses.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor and pay all such checks and electronic payment requests when presented for payment, and that all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

9.      The Debtors are authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Order and was not cleared by the applicable bank or other financial institution.

10.     In no event shall the Debtors, after the Petition Date, pay to or on behalf of any employee an aggregate of more than $12,850 in prepetition wages, salaries, commissions, vacation, severance and sick leave pay pursuant to 11 U.S.C. § 507(a)(4).  In determining the aggregate amount to be paid in contributions to the employee benefit plans, the formula set forth in 11 U.S.C. § 507(a)(5) shall be used.  Employment taxes shall be paid in accordance with 11 U.S.C. § 507(a)(8)(D).

11.     Debtors have represented by filing the Motion that there is cause to believe that debt with greater priority than the debts allowed to be paid herein pursuant to 11 U.S.C. § 507(a) will not receive less favorable treatment in this case.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

13.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**This Order Was Signed And Entered Electronically as Indicated At The Top Of The First Page**


APPROVED FOR ENTRY**:**


*/s/ William L. Norton III*

William L. Norton III (TN 10075)

Bradley

1600 Division St., Suite 700

Nashville, TN 37203

Tel: (615) 252-2397

bnorton@bradley.com

*Attorney for Debtors*