# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In re:<br><br>Vanguard Healthcare, LLC, *et. al.*[1]<br><br>                Debtors. | Case No. 16-03296<br>Chapter 11<br>Administratively Consolidated<br>Judge Mashburn |

## STATEMENT OF POSITION AND RESERVATION OF RIGHTS FILED BY HEALTHCARE FINANCIAL SOLUTIONS, LLC WITH RESPECT TO DEBTOR VANGUARD OF MEMPHIS, LLC'S MOTION TO SELL ASSETS FREE AND CLEAR OF LIENS

This Statement of Position and Reservation of Rights (the "**SOP**") is filed by Healthcare Financial Solutions, LLC ("**HFS**"), the primary secured creditor and a party-in-interest in the Chapter 11 cases of the above-captioned debtors (each a "**Debtor**" and collectively, the "**Debtors**").[2] HFS files this SOP with respect to the *Motion By Vanguard of Memphis To (I) Approve (A) Assumption of the Asset Purchase Agreement with Skyline Healthcare, LLC (B) the Sale Transaction Pursuant to the Asset Purchase Agreement Free and Clear of Claims, Liens, Encumbrances, and Other Interests; (C) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 848] (the "**Sale Motion**") filed by Debtor Vanguard of Memphis, LLC ("**Memphis**").

In the Sale Motion, Memphis requests authority to sell most of its business assets (the "**Subject Assets**") free and clear of all existing claims and liens, including liens held by HFS. As discussed

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Vanguard Healthcare, LLC (9650); Vanguard Healthcare Services, LLC (7563); Vanguard Financial Services, LLC (3403); Aurora Australis, LLC (7099); Boulevard Terrace, LLC (8709); Elderscript Services, LLC (4179); Eldercare of Jackson County, LLC (7855); Glen Oaks, LLC (8238); Palace RBS, LLC (9601); Shady Lawn, LLC (7397); Vanguard of Ashland, LLC (8367); Vanguard of Church Hill, LLC (1049); Vanguard of Memphis, LLC (9650); Vanguard of Manchester, LLC (6203); Vanguard of Memphis, LLC (4623); Vanguard of Ripley, LLC (1050); Vicksburg Convalescent, LLC (7298); and Whitehall OpCo, LLC (6186).

[2] To the extent the objection deadline applies with respect to this SOP, the Debtors agreed to extend the deadline for HFS to file this SOP to February 16, 2017.

QB\43939733.3

below, the purchase price for the Subject Assets is far less that the amount of HFS's liens encumbering the Subject Assets. HFS had consented to the proposed sale (the "**Memphis Sale**") under the terms described in this SOP, but not otherwise.

One party has opposed the Sale Motion. The Official Committee of Unsecured Creditors (the "**Committee**") filed an objection [Docket No. 960] (the "**Objection**").

## I. INTRODUCTION.

Memphis owns and operates a nursing home facility known as Poplar Point Health and Rehabilitation located at 131 North Tucker Street, Memphis, Tennessee (the "**Facility**"). The Subject Assets owned by Memphis include, among other things, the real property, improvements, fixtures, and equipment that comprise the Facility.

Memphis is obligated to HFS on the Loan Obligations (comprising both the Term Loan Obligations and the Revolving Loan Obligations).[3] The Loan Obligations owing to HFS total more than $80 million. As security for the repayment of the Loan Obligations, HFS holds first priority liens and security interests in collateral including, without limitation, the Subject Assets owned by Memphis.[4]

Through the Sale Motion, Memphis requests authority to sell the Subject Assets to Skyline Health Care LLC ("**Buyer**") (or to a higher and better bidder) under the terms of the Asset Purchase Agreement (the "**APA**") described in the Sale Motion. The cash purchase price for the Subject Assets under the APA is $9 million. HFS consents to the sale of the Subject Assets free and clear of its liens under the terms stated in the Sale Motion and Proposed Sale Order, if and only if HFS receives a cash

---

[3] Unless otherwise defined herein, capitalized terms used in this SOP with have the meanings stated in the *Stipulated Final Order Authorizing Debtors' Limited Use of Cash Collateral, Granting Adequate Protection, and Granting Related Relief* [Docket No. 168], as modified and extended [*see* Docket Nos. 590 and 709] (the "**Cash Collateral Order**").

[4] A detailed description of the loans owing to HFS is set forth in the *Statement Of Position And Reservation Of Rights Filed By Healthcare Financial Solutions, LLC With Respect To The Debtors' Proposed Final Cash Collateral Order* [Docket No. 153] (the "**Cash Collateral Statement**"), which is incorporated herein by this reference.

payment at closing of $7,500,000 (or, if the Court approves a sale for a gross purchase price in excess of $10,000,000, an amount equal to 75% of the gross purchase price). In addition, if the sale of the Subject Assets closes prior to March 31, 2017, HFS will agree to release its security interest in accounts generated at the Memphis Facility prior to the sale that are collected after the sale closing. The Debtors estimate that, with the agreed lien release by HFS, over $2,000,000 of proceeds from the sale and post-sale collections of accounts will be available to pay other creditors of Memphis.

## II.    COMMITTEE OBJECTION.

The Committee does not dispute that (i) the terms of the proposed sale, including the purchase price, are fair and reasonable, (ii) there are sound business reasons for Memphis to sell the Subject Assets at this time, (iii) the Buyer is an unrelated third party and the APA has been negotiated without collusion and in good faith, and (iii) the Subject Assets are subject to valid, perfected and enforceable liens held by HFS as security for the Loan Obligations owing by Memphis (and others) that exceed the value of the Subject Assets.

In the Objection, the Committee contends (without authority) that each Debtor should only be responsible for some allocated share of the total Loan Obligations owing to HFS. Objection, pp. 2-3. While recognizing that equitable marshaling does not apply to this situation, the Committee vaguely argues that the Court should apply "a similar [and unspecified] principle" to "do the right thing" by approving the sale only if the senior secured creditor does not receive the agreed release payment from sale proceeds at closing. Objection, p. 4.

## III.   HFS'S STATEMENT OF POSTION REGARDING OBJECTION.

### A.    The Memphis Sale Cannot Be Approved Absent HFS's Consent.

In the Sale Motion, Memphis requests authority to sell the Subject Assets free and clear of all liens, claims, and interests in accordance with Bankruptcy Code § 363. As noted, the Subject Assets are encumbered by liens and security interests held by HFS securing obligations far in excess of the sale purchase price. Under Bankruptcy Code § 363(f), Memphis can sell the Subject Assets free and clear of liens, claims, and interests only if one of the following conditions exist:

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a monetary satisfaction of such interest.

11 U.S.C. § 363(f). Memphis satisfies Section 363(f)(2) with respect to HFS's liens because HFS has consented to the proposed sale under the terms stated in this SOP. In particular, HFS consents to the sale of the Subject Assets free and clear of its liens under the terms stated in the Sale Motion and Proposed Sale Order, if and only if HFS receives a cash payment at closing in an amount equal to the greater of $7,500,000, or 75% of the gross purchase price. HFS does <u>not</u> consent to a sale of the Subject Assets under revised terms as suggested by the Committee, and thus a sale under such revised terms cannot be approved because it does not satisfy any of the requirements of Section 363(f). *See, e.g., In re Scott*, Case No. 13-51169, 2013 WL 4498987 *2-4 (Bankr. E.D. Ky. Aug. 21, 2013) (denying a debtor's motion to sell collateral for less than the amount owed to the secured creditor over the secured creditor's objection).

### B. Memphis Is Liable For The Full Amount Of The Term Loan Obligations, Not Some Allocable Portion.

Memphis is one of the borrowers under the Term Loan Documents. All of the Term Loan obligors, including Memphis, are jointly and severally liable to HFS for the full amount of the Term Loan Obligations.

In a somewhat misleading fashion, and to support its claim that HFS should be forced to somehow allocate its debt among the various Debtors, the Committee discusses an old schedule to the original Term Loan Credit Agreement that purports to allocate liability among the borrowers. *See* Objection, p. 3.[5] While the Committee does state that this schedule "is not recognized by HFS," the

---

[5] In its Objection, the Committee references an "Exhibit A," but no exhibits are attached.

Committee fails to explain that this schedule is no longer part of the Term Loan Credit Agreement. With respect to this point, HFS states as follows:

    a.    As the Committee is well aware, the prior schedule mentioned in the Objection (the "**Prior Schedule**") no longer is part of the Term Loan Credit Agreement, and thus has no legal effect on the rights of HFS or Memphis. On July 27, 2015, the Term Loan obligors and HFS entered into that certain *Waiver, Consent And Fifth Amendment To Credit Agreement* (the "**Fifth Amendment**"), amending and modifying the Term Loan Credit Agreement. In the Fifth Amendment, the prior schedules to the Term Loan Credit Agreement were deleted in their entirety and replaced with the schedules attached to the Fifth Amendment. Accordingly, only the schedules attached to the Fifth Amendment are in effect with respect to the Term Loan Credit Agreement. With respect to the Prior Schedule (which was Schedule 1.1(a)(ii)), the Fifth Amendment expressly states that "[f]or the avoidance of doubt, Schedule 1.1(a)(ii) ("Ratable Shares") is hereby deleted in its entirety and shall not be replaced."[6] *See* Fifth Amendment, Section 5.

    b.    The Term Loan Credit Agreement states expressly that each of the Term Loan obligors are jointly and severally liable for the full amount of the Term Loan Obligations. Specifically, Section 10.23 of the Term Loan Credit Agreement provides as follows:

> 10.23   <u>Joint and Several</u>.
>
> (a)   Borrowers is defined collectively to include all Persons constituting Borrowers (i.e., each of Borrowers listed on <u>Schedule A</u> attached hereto, as amended from time to time); *provided, however*, that any references herein to "any Borrower", "each Borrower" or similar references, shall be construed as a reference to each Person comprising Borrowers (i.e., each of Borrowers listed on <u>Schedule A</u> attached hereto, as amended from time to time). Each Person comprising Borrowers (i.e., each of Borrowers listed on <u>Schedule A</u> attached hereto, as amended from time to time) **shall be jointly and severally liable for**

---

[6] Prior to its deletion from the Term Loan Credit Agreement, Schedule 1.1(a)(ii) was amended multiple times. In addition to relying on a deleted schedule, it appears the Committee is relying on a version of Schedule 1.1(a)(ii) that has not been in effect since at least November 12, 2012. In addition, although no longer relevant, the Committee's suggested interpretation of Schedule 1.1(a)(ii) is incorrect—all the Term Loan obligors have been jointly and severally liable for all of the Term Loan Obligations at all times.

**all of the obligations of Borrowers under this Agreement, regardless of which of Borrowers actually receives the proceeds of the indebtedness governed hereby or the benefit of any other extensions of credit hereunder or the benefit of any other extension of credit under the Loan Documents, or the manner in which Borrowers, Agent or Lenders account therefor in their respective books and records**. . . .

*See* Fifth Amendment, Section 4(r) (emphasis added).

        c.      Notwithstanding the vague suggestions from the Committee, the Court should not somehow unilaterally re-write the Term Loan Credit Agreement to greatly limit the amount of Memphis' liability for the Term Loan Obligations. Certainly, the Committee has not submitted any authority to justify such extraordinary relief. *See Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 423 (6th Cir. 2000) ("'[W]e do not read § 105 as conferring on courts such broad remedial powers. The 'provisions of this title' [language in 105(a)] simply denote a set of remedies fixed by Congress. A court cannot legislate to add to them.'") (*quoting Kelvin v. Avon Printing Co., Inc. (In the Matter of Kelvin Publishing, Inc.)*, 72 F.3d 129 (6th Cir. 1995)); *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir. 1986) (Section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."); *In re Pub Dennis of Cumberland, Inc.*, 142 B.R. 38, 40 (Bankr. D.R.I. 1992) ("[W]e do not believe that the legislature intended to authorize the bankruptcy court, under § 105, to rewrite the parties' loan documents, on the grounds asserted here.").

        **C.      The Marshalling Doctrine Is Not A Remedy Available to the Committee.**

As discussed in Section II above, the Committee acknowledges that equitable marshaling is not applicable in these cases, but then urges the Court to apply an unspecified "similar principal" and invoke some kind of marshaling to limit HFS' lien rights. *See* Objection, p. 4. The Committee does not identify facts or legal authority to support its vague allegations.

The doctrine of marshaling (or the "two funds" doctrine) is not even theoretically applicable unless "two or more creditors [have a] claim against one debtor and the first creditor can reach two properties held by the debtor whereas the second can reach only one." *In re Computer Room, Inc.*, 24

B.R. 732, 734 (Bankr. N.D. Ala. 1982). "For the doctrine to apply there must be at least **two secured creditors** of **the same debtor**, two funds or potential funds **belonging to the debtor**, with one of the creditors having recourse to both funds, and the other creditor having access to only one of the funds." *In the Matter of Dealer Support Serv. Int'l, Inc.,* 73 B.R. 763, 764 (Bankr. E.D. Mich. 1987) (emphasis added).[7]

As a threshold matter, only secured creditors may invoke the marshaling doctrine, and, therefore, the Committee lacks standing to do so. *See Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.)*, 309 B.R. 277, 291 (B.A.P. 6th Cir. 2004) ("Appellants do not even meet the first requirement because they are not secured creditors and unsecured creditors cannot invoke the equitable doctrine of marshaling") (*abrogated on other grounds* by *Phar-Mor, Inc. v. McKesson Corp.*, 534 F.3d 502, (6th Cir. 2007)); *In re Gibson Group, Inc.*, 151 B.R. 133, 134–35 (Bankr. S.D. Ohio 1993) ("majority rule ... denies unsecured creditors standing to invoke the doctrine of marshaling.").[8]

In addition, the marshaling doctrine mandates that assets can only be marshaled among creditors of a common debtor. *Matter of Dealer Support Serv. Int'l, Inc.,* 73 B.R. at 765 ("'The

---

[7] *See also In re Spectra Prism Indus., Inc.*, 28 B.R. 397, 399 (B.A.P. 9th Cir. 1983) (*citing Victor Gruen Associates v. Glass,* 338 F.2d 826, 829 (9th Cir.1964)) (requirements for marshaling are (i) there are two or more funds owned by a common debtor; (ii) only one creditor has a right to resort to both funds of the common debtor; (iii) there is no prejudice to the two-fund creditor; and (iv) marshaling will not harm third parties).

[8] *See also In re Brazier Forest Prods., Inc.*, 921 F.2d 221, 223 (9th Cir. 1990) (only secured or lien creditors may assert marshaling); *In re Arlco, Inc.*, 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999) ("As a threshold matter, marshaling is not applicable in this case because . . . Galey is not a secured creditor."); *In re Atlas Commercial Floors, Inc.*, 125 B.R. 185, 188 (Bankr. E.D. Mich. 1991) ("[C]ourts have generally held that the remedy of marshaling is unavailable to a creditor who holds an unsecured claim.") (citing cases); *Craner v. Marine Midland Bank, N.A. (In re Craner)*, 110 B.R. 111, 123 (Bankr. N.D.N.Y. 1988) ("Under the majority view, an unsecured creditor may not avail himself of the doctrine of marshalling assets as it is basically a protection for junior secured creditors."), *rev'd in part on other grounds*, *In re Craner*, 110 B.R. 124 (N.D.N.Y. 1989); *Simon & Schuester, Inc. v. Advanced Mktg. Svcs., Inc. (In re Advanced Mktg. Svcs., Inc.),* 360 B.R. 421, 427 (Bankr. D. Del. 2007) (marshaling does not apply to unsecured creditors); *In re Borges,* 184 B.R. 874, 879-80 (Bankr. D. Conn. 1995) (recognizing that the doctrine of marshaling ordinarily applies only to secured creditors).

requirement that both funds be in the hands of a common debtor is not merely a formal or technical requirement; rather, it limits marshaling to cases for which the marshaling doctrine purports to provide the rule of decision'") (*quoting DuPage Lumber & Home Improvement Center Co. v. Georgia-Pacific Corp. (In re DuPage Lumber & Home Improvement Center Co.),* 34 B.R. 737, 740-41 (Bankr. N.D. Ill. 1983)).[9]

Finally, the marshaling doctrine cannot be applied to the detriment of a secured creditor. *Matter of Dealer Support Serv. Int'l, Inc.,* 73 B.R. at 765 ("Moreover, it is generally recognized that marshaling should not be ordered if the creditor compelled to marshal will be prejudiced.").[10] In this regard, most courts hold that injury to unsecured creditors is not relevant to the marshaling doctrine. *Topcon Instrument Corp. of Am. v. West Coast Optical Instruments, Inc. (In re West Coast Optical Instruments, Inc.),* 177 B.R. 720, 722 (M.D. Fla. 1992) ("Injury to persons other than the senior lienholder is generally relevant only where the third person has a right or equity superior or equal to that of the person requesting the marshaling order."); *In re Robert E. Derecktor of Rhode Island, Inc.,* 150 B.R. 296, 300 (Bankr. D.R.I. 1993) ("The caveat against causing harm or prejudice to others applies only to parties having equity *equal* to the party seeking to invoke marshaling.").

The Committee does not address any of the required factors for marshaling, or describe how it possibly applies in these cases. Even a summary review of the record establishes that none of the

---

[9] *See also In re Baldridge*, 2007 WL 725737 at *1 (Bankr. D. Ariz. 2007) (refusing to marshal the assets of a non-debtor in favor of unsecured creditors because "[t]he doctrine of marshaling requires that the assets sought to be marshaled must be in the hands of or owned by a common debtor. . . . Marshaling is inappropriate when this requirement is not met") (citing *In re Harrold's Hatchery and Poultry Farms, Inc.,* 17 B.R. 712, 716 (Bankr. M.D. Ga. 1982) and *In re Francis Construction Co., Inc.,* 54 B.R. 13, 15 (Bankr. D.S.C. 1985)).

[10] *See also In re Borges*, 184 B.R. 874, 880 (Bankr. D. Conn. 1995) ("[T]he doctrine of marshaling will not be employed to prejudice creditors with security interests of a priority equal to or higher than that of the security interest of the party seeking marshaling."); *In re Teresi*, 134 B.R. 392, 398 (Bankr. E.D. Cal. 1991) ("[T]he court determines that neither [junior lienholder] nor debtors are entitled to have the [senior lienholder's] debt allocated according to their respective demands. Rather, any allocation of the [senior lienholder's] debt between the properties is left to the "choice" of the [senior lienholder]."); *In re Gibson Group, Inc.,* 151 B.R. at 135 ("[T]he marshalling doctrine only applies if the rights of the secured creditors are not prejudiced.").

Case 3:16-bk-03296    Doc 973    Filed 02/16/17    Entered 02/16/17 17:06:38    Desc Main
Document      Page 8 of 11

factors required for marshaling exists. The Committee lacks standing to raise the issue; no "common debtor" exists for purposes of marshaling; and HFS would be prejudiced (among other things, it is inherently prejudicial to seek to impair HFS' undisputed liens in the Memphis collateral in a context where the Committee has failed to identify or demonstrate <u>any</u> basis for marshaling).

The Committee has not even alleged (let alone established) any facts to support even theoretical application of marshaling in these cases. HFS reserves fully its rights to present additional argument and evidence to the Court in the event the Committee tries to develop its marshaling allegations.

IV. **RESERVATION OF RIGHTS.**

HFS objects to any sale of the Subject Assets, except pursuant to the terms and conditions of the Sale Motion and the Proposed Sale Order as provided in this SOP (to which HFS has consented). HFS reserves its right to present further argument and evidence to the Court in conjunction with any hearing on the Sale Motion. In addition, HFS reserves all claims, rights and remedies with respect to all issues raised by the Committee related to the Memphis Sale, the HFS Loan Documents, and all other matters.

V. **CONCLUSION.**

For all of the foregoing reasons, HFS asserts that the Sale Motion is appropriate and should be approved by the Court.

Dated: February 16, 2017

        Respectfully submitted,

        QUARLES & BRADY LLP

        /s/ Robert P. Harris
        John A. Harris (admitted *pro hac vice*)
        Robert P. Harris (admitted *pro hac vice*)
        Renaissance One
        Two North Central Avenue
        Phoenix, Arizona 85004-2391
        Telephone: 602-229-5200
        Email: john.harris@quarles.com
        Email: robert.harris@quarles.com

-and-

ADAMS AND REES LLP
Charles W. Cook, III  (No. 14274)
424 Church Street, Suite 2700
Nashville, Tennessee 37219
Telephone:  615-259-1450
Facsimile:   615-259-1470
Email: charles.cook@arlaw.com

Attorneys for Healthcare Financial Solutions, LLC

QB\43939733.3

## CERTIFICATE OF SERVICE

      I hereby certify that on this 16th day of February, 2017, a true and exact copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. Parties may access this filing through the Court's electronic filing system.

      /s/ Robert P. Harris
      Robert P. Harris