# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| VANGUARD HEALTHCARE, LLC, *et al.*,[1] | ) Case No. 16-03296 |
| | ) Chapter 11 |
| Six Cadillac Dr., Suite 310 | ) Judge Mashburn |
| Brentwood, TN 37027 | ) Jointly Administered |
| Debtors. | ) |
| | ) Hearing: February 21, 2017 |

## RESPONSE TO COMMITTEE'S OBJECTION TO DEBTORS' MOTION TO SELL ASSETS OF VANGUARD OF MEMPHIS, LLC

Vanguard of Memphis, LLC, the debtor in possession in Case No. 16-03318 (the "Debtor" or "Poplar Point"), hereby files this response to the Unsecured Creditor Committee's objection [Docket No. 960] (the "Objection") to the Debtor's motion to sell substantially all of its assets [Docket No. 848] (the "Sale Motion").[2] For its response, the Debtor states as follows:

## BACKGROUND

1. The Debtor owns and operates a nursing home known as Poplar Point Health and Rehabilitation, located at 131 North Tucker St., Memphis, Tennessee 37355 (the "Facility"). The Facility has 169 beds and approximately 172 employees.

2. Vanguard Healthcare, LLC, the parent entity of Poplar Point, marketed Poplar Point for sale through the services of New Century Capital Partners ("NCCP").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Vanguard Healthcare, LLC (9650); Vanguard Healthcare Services, LLC (7563); Vanguard Financial Services, LLC (3403); Aurora Australis, LLC (7099); Boulevard Terrace, LLC (8709); Elderscript Services, LLC (4179); Eldercare of Jackson County, LLC (7855); Glen Oaks, LLC (8238); Palace RBS, LLC (9601); Shady Lawn, LLC (7397); Vanguard of Ashland, LLC (8367); Vanguard of Church Hill, LLC (1049); Vanguard of Crestview, LLC (1046); Vanguard of Manchester, LLC (6203); Vanguard of Memphis, LLC (4623); Vanguard of Ripley, LLC (1050); Vicksburg Convalescent, LLC (7298); and Whitehall OpCo, LLC (6186).

[2] Unless otherwise defined, all capitalized terms shall have the meanings provided in the Sale Motion.

3. Ultimately, Skyline Healthcare, LLC made an offer and the parties negotiated a sale of substantially all of Poplar Point's assets. The parties memorialized their agreement by executing an asset purchase agreement on December 13, 2016 ("Skyline APA") and the Sale Motion was filed on January 24, 2017.

4. Notice of the Sale Motion was provided to all creditors of the Debtor and two Qualified Bids were submitted. Pursuant to Paragraph 19 of the Sale Motion, the Debtor conducted an auction at the offices of Debtor's counsel commencing at 10:00 am on Friday, February 17, 2017. The three Qualified Bidders were present: Skyline Healthcare, LLC ("Skyline"), Canton Crossings, LLC ("Canton Crossings") and Med Healthcare Partners, LLC ("Med Healthcare Partners").

5. At the conclusion of the auction, the Debtor, after consultation with Healthcare Financial Solutions, LLC ("HFS") and the Official Committee of Unsecured Creditors (the "Committee"), determined that the highest and best offer was the asset purchase agreement from Med Healthcare Partners ("Med Healthcare Partners APA"), a copy of which is attached hereto as <u>Exhibit A</u>.

6. The offer from Med Healthcare Partners provided the following key terms:

   a. $9,550,000 cash at closing

   b. 36 months contract with Elderscript Services for sale of pharmacy products

   c. Closing to occur on March 31, 2017 with three options to extend 30 days each

7. A Backup Bid was accepted by the Debtor with Skyline as follows:

   a. $9,000,000 cash at closing

   b. 60 months contract with Elderscript Services for sale of pharmacy products

   c. Closing to occur on March 31, 2017 with one option to extend 30 days

 8. A Backup Bid was accepted by the Debtor with Canton Crossings as follows:

   a. $9,500,000 cash at closing

   b. no contract with Elderscript Services for sale of pharmacy products

   c. Closing to occur on March 31, 2017 with three options to extend 30 days each

## REPLY TO OBJECTION

 9. The Objection challenges the sale on the following grounds: (i) whether the sale is to the highest and best offer, (ii) the payment of 2% brokerage commission ($191,000) to NCCP, (iii) the payment of a break-up fee in the amount of $250,000 to Skyline, and (iv) the payment of $7,500,000 to HFS.

**A. Highest and Best Offer**

 10. The Debtors will present the testimony of the Debtors' CEO, William D. Orand and Aaron Kneas, the broker who assisted the Debtors in negotiating the initial asset purchase agreements with Skyline to establish the proof required to meet the requirements under § 363(b) under the Bankruptcy Code. The legal requirements are set forth in the Sale Motion.

 11. In general, the Debtors assert that the mere fact that there were three bidders at the auction establishes the necessary proof that the Med Healthcare Partners' asset purchase agreement is the highest and best offer.

**B. Payment of Brokerage Fee**

 12. As previously disclosed in the Sale Motion and with respect to the sale of Vanguard of Crestview's assets [Docket No. 107], by agreement dated January 1, 2015 ("<u>NCCP Agreement</u>"), NCCP was engaged prepetition to act as a financial adviser for the Debtors. A copy

3

Case 3:16-bk-03296   Doc 989   Filed 02/20/17   Entered 02/20/17 14:28:18   Desc Main
Document   Page 3 of 8

of the NCCP Agreement is attached hereto as Exhibit B. The contractual services include assisting with the sale of certain of the Debtors' assets. Pursuant to the terms of the NCCP Agreement, NCCP is entitled to a transaction fee equal to 2% of the "Enterprise Value" paid to the Debtors with respect to any sale.

13. Although stated otherwise in the Sale Motion, NCCP's services with respect to the sale of the Poplar Point assets were performed after the Crestview sale that occurred on September 1, 2016. Consistent with the procedures employed with respect to the Crestview sale, the Debtors disclosed the terms of the NCCP engagement in the Sale Motion and requested approval of the commission as a portion of the relief requested in the Sale Motion.

14. To the extent that Court approval of the terms of employment for NCCP is necessary under §§ 327, 328, or 330 of the Bankruptcy Code in advance of the approval of the Sale Motion, the Debtors submit that the Court can grant such approval *nunc pro tunc*. *See, e.g.*, *In re Microwave Products of America, Inc.*, 104 B.R. 900, 905 (Bankr. W.D. Tenn. 1989); *In re Twinton Props. P'ship*, 27 B.R. 817 (Bankr. M.D. Tenn. 1983).

15. Without limitation, employment of NCCP for the purposes described in the Sale Motion fit the criteria of §§ 327, 328, and 330. The Debtors contracted with NCCP to provide the services rendered and approves of the proposed compensation. Through the Sale Motion, all creditors and parties in interest with respect to Poplar Point have had adequate notice of the proposed compensation. NCCP provided high quality services in support of the sale of Poplar Point's assets, and the Committee has not provided any basis for denying the compensation other than failure to file an application in a particular form.

16. Additionally, the Debtors have attached hereto as Exhibit C a declaration of Aaron Kneas in order the meet the requirements of Bankruptcy Rule 2014.

17. If NCCP was previously approved as a professional pursuant to the terms of the NCCP Agreement, the Court would still have authority to review the proposed fees under § 328(a). Here, the Committee has not suggested that allowance of the same type of fee previously disclosed and allowed in the Crestview sale is "improvident" or otherwise subject to disallowance under section 328.

18. Finally, a commission tied to a sale of the debtor's property may be paid as an administrative expense under § 503(b)(1)(A). *See In re Ferncrest Court Partners, Ltd.*, 66 F.3d 778, 782 (6th Cir. 1995). And HFS has consented to the payment of any allowed commission as a surcharge on HFS's collateral under § 506(c). *See id.* at 782-83.

19. In sum, NCCP's services provided significant benefits to the estate and there is no ascertainable or foreseeable damage by allowing *nunc pro tunc* approval of NCCP's professional services and compensation. *See Microwave Products of America, Inc.*, 104 B.R. at 905. The Court should allow the payment of NCCP's compensation from HFS's cash collateral at the closing of the sale.

C.    **Payment of Break-up Fee**

20. Under the terms of the Skyline APA and the Med Healthcare Partners APA, if Skyline was not the approved offer, it was entitled to a break-up fee in the amount of $250,000. This represents less than 3% of the purchase price and is a typical fee authorized for payment to "stalking horse bidders" in order to encourage a bidder to step forward and negotiate an APA in advance of the bankruptcy approval process. The allowance of a break-up fees is an integral part of the bankruptcy sale process because if such fees are not allowed, prospective bidders would be less inclined to take the initiative to negotiate an asset purchase agreement when they know that ultimately that agreement will be shopped around in order to get a higher bid.

21.     The Med Healthcare Partners APA provides for a purchase price in excess of Skyline's bid that is more than double the amount of the proposed break-up fee to Skyline. Thus even after paying the break-up fee, the Debtors will realize more from the sale to Med Healthcare Partners than would have been received from Skyline.

**D.     Payment to Healthcare Financial Solutions**

22.     Finally, the Committee challenges the agreed payment of $7,500,000 to HFS. This is an important aspect of the Sale Motion because without the consent of HFS, the sale could not take place. *See* HFS Statement of Position and Reservation of Rights [Docket No. 973]. Pursuant to § 363(f) of the Bankruptcy Code, the only means to sell the Debtor's assets is with the consent of the lienholder, HFS. Further as evidence by the Cash Collateral Order approved by the Court on June 16, 2016 [Docket No. 168], HFS holds a lien on all of the Debtors' assets to secure an indebtedness totaling approximately $80 million as of the commencement of these jointly administered Chapter 11 cases. Thus the lien asserted against the Debtor partially secures the entire $80 million debt, and accordingly, HFS could refuse to release its lien unless it received the full amount of the purchase price under the Med Healthcare Partners APA.

23.     The Debtors' jointly administered Chapter 11 estates will all benefit from the sale of Poplar Point for the following reasons:

> a. The payment to HFS reduces the secured debt to HFS and thus reduces the obligations owed by the other Debtors to HFS.
>
> b. The agreed release price enables there to be sufficient revenues from the sale to pay closing costs and all administrative expenses accrued in the Debtor's Chapter 11 case, and the Debtors' undisputed trade debt in full. A copy of a spreadsheet showing the waterfall of proceeds is attached hereto

6

as <u>Exhibit D</u>. These funds will reduce the obligations to the Class 5 unsecured creditors under the Joint Plan of Reorganization ("Joint Plan") that is currently being considered by the Court for approval.

    c.   The sale will enable the Debtors to eliminate one of the lower performing facilities of the Vanguard entities and thus enhance the ability of the Debtors to perform under the Joint Plan.

24.    The release prices to be paid to HFS upon the sale of Poplar Point, Whitehall and Shady Lawn were all important negotiations between the Debtors and HFS under the Joint Plan. To require HFS to accept less would not only be contrary to the statutory requirements under § 363(f) of the Bankruptcy Code, but would also upset a lengthy and complex negotiated settlement between the Debtors and HFS that the Debtors believe is critical to their reorganization.

For the reasons set forth in the Sale Motion and above, the Debtor requests the Court approve the Sale Motion and overrule the Objections by entering the Proposed Order attached hereto as <u>Exhibit E</u>.

                              Respectfully Submitted:

By: */s/ William L. Norton III*
     William L. Norton, III (#010075)
     James B. Bailey (*pro hac vice*)
     BRADLEY
     1600 Division Street, Suite 700
     Nashville, Tennessee 37203
     Telephone:   (615) 252-2397
     Facsimile:   (615) 252-6397
     bnorton@bradley.com
     jbailey@bradley.com
     *Attorneys for Debtors*

Certificate of Service

   The undersigned hereby certifies that on the 20th day of February, 2017, the foregoing document was automatically served via the Court's electronic filing system to those parties registered to receive electronic filings in this case.

                       */s/ William L. Norton III*