# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Vanguard Healthcare, LLC[1], | ) | Case No. 16-03296 |
| | ) | Judge Mashburn |
| | ) | |
| Six Cadillac Dr., Suite 310 | ) | Jointly Administrated |
| Brentwood, TN 37027 | ) | |
| Debtors. | ) | |
| | ) | |

## DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION

## ARTICLE I
## SUMMARY

1.01    This Plan of Reorganization under Chapter 11 of the Bankruptcy Code is being presented by the following Debtors in this jointly administered case:

Vanguard Healthcare, LLC, Case No. 16-03296
Vanguard Healthcare Services, LLC, Case No. 16-03297
Vanguard Financial Services, LLC, Case No. 16-03298
Aurora Australis, LLC, Case No. 16-03300
Boulevard Terrace, LLC, Case No. 16-03302
Eldercare of Jackson County, LLC, Case No. 16-03308
Elderscript Services, LLC, Case No. 16-03306
Glen Oaks, LLC, Case No. 03310
Palace RBS, LLC, Case No. 16-03312
Shady Lawn, LLC, Case No. 16-03313
Vanguard of Ashland, LLC, Case No. 16-03314
Vanguard of Church Hill, LLC, Case No. 16-03315
Vanguard of Manchester, LLC, Case No. 16-03317
Vanguard of Ripley, LLC, Case No. 16-03319
Vicksburg Convalescent, LLC, Case No. 16-03321
Whitehall OpCo, LLC, Case No. 16-03322

---

1 The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Vanguard Healthcare, LLC (9650); Vanguard Healthcare Services, LLC (7563); Vanguard Financial Services, LLC (3403); Aurora Australis, LLC (7099); Boulevard Terrace, LLC (8709); Elderscript Services, LLC (4179); Eldercare of Jackson County, LLC (7855); Glen Oaks, LLC (8238); Palace RBS, LLC (9601); Shady Lawn, LLC (7397); Vanguard of Ashland, LLC (8367); Vanguard of Church Hill, LLC (1049); Vanguard of Crestview, LLC (1046); Vanguard of Manchester, LLC (6203); Vanguard of Memphis, LLC (4623); Vanguard of Ripley, LLC (1050); Vicksburg Convalescent, LLC (7298); and Whitehall OpCo, LLC (6186).

1.02    This Plan provides for seven classes of Claims and one class of equity Interests. Although this is a joint plan, the Plan does not effect a substantive consolidation of the assets and claims of each Debtor and not all classes apply to each Debtor.  All Creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their Claim for each applicable Debtor.

1.03    The holders of Claims and Interests will be asked to vote on each Plan for each applicable Debtor in which that party asserts a Claim or Interest.

1.04    A Disclosure Statement (Docket No. 968) that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## DEFINITIONS

The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan, and are supplemented by the following definitions:

2.01    "Amendment Fees" shall mean, collectively, all amendment fees that were owing as of the Date of Filing (and continue to be owed) by the Debtors and other borrowers under the Revolving Loan Documents and Term Loan Documents.  As of December 31, 2016, the unpaid Amendment Fees total $1,366,713.93.

2.02    "Administrative Expense" shall mean an expense that is allowed for payment pursuant to § 503 of the Code.

2.03    "Administrative Expense Bar Date" means the date by which any request for payment of Administrative Expenses is deemed to be timely filed and served under § 503(a) of the Code, which date shall be thirty (30) days following the Effective Date of the Plan, *provided* (i) applications for payment of fees and expenses of professionals under § 330 will be deemed timely filed and served if filed and served within sixty (60) days following the Effective Date of the Plan.

2.04    "Allowed Claim" shall mean a Claim treated under the Plan in the amount allowed for payment under the Bankruptcy Code.  For the purposes of this Plan, a Claim will be deemed an Allowed Claim only as follows: (i) the amount scheduled by the Debtors and not otherwise marked by any Debtors as being contingent, disputed or unliquidated in that Debtor's respective Chapter 11 case, (ii) the amount evidenced by a proof of claim filed with the Court as of the Claim Bar Date, or (iii) the amount evidenced by a proof of claim filed after the Claim Bar Date that is allowed by agreement of the Debtors or Court order, *provided* any Claim that is the subject to an objection filed by any party in interest within 45 days following Confirmation as to

its amount shall not be an Allowed Claim in any amount for purposes of distribution until the objection has been resolved by agreement or final order.

2.05    "Case(s)" shall mean the Chapter 11 cases specified in Section 1.01.

2.06    "Causes of Action" shall mean all claims that any Debtor has as of the Effective Date of the Plan against any party, including, but not limited to claims listed on the Vanguard Healthcare LLC Schedule A/B (Docket No. 90), including but not limited to, claims against Signature Healthcare LLC , but excluding the claims settled with Kindred Nursing Centers East and Kindred Healthcare Operating Inc.

2.07    "Chapter 11" shall mean Chapter 11 of the Code.

2.08    "Claim" shall mean a claim against a Debtor as defined in §101(5) of the Code and includes any unliquidated claim for professional or general liability covered by the Debtors' insurance.

2.09    "Claim Bar Date" shall mean September 6, 2016 for non-governmental claimants and November 2, 2016 for government claims (except for claims asserted by the government under the False Claims Act), *provided* (i) the deadline for filing claims against any Debtor arising from the rejection of an executory contract or unexpired lease of the Debtor shall be either September 6, 2016, or thirty (30) days following the rejection of the agreement, whichever is later, and (ii) upon any amendment to the Debtors' schedules regarding any Claim for which no proof of claim has been filed, the affected creditor will have thirty (30) days following the amendment to file a proof of claim.

2.10    "Code" shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§101, et seq.

2.11    "Commitment Fee" shall mean the fee for restructuring payable to the Restructured Loan Lender under the Restructured HFS Loan Documents.

2.12    "Committee" shall mean the Official Committee of Unsecured Creditors appointed by the U.S. Trustee by Notice filed May 24, 2016 (Docket No. 89), and the Court approved counsel for the Committee.

2.13    "Confirmation" or "Confirmation Order" shall mean the entry by the Court of an order confirming the Plan.

2.14    "Confirmation Hearing" shall mean the date that the hearing on the confirmation of the Plan is completed.

2.15    "Court" shall mean the United States Bankruptcy Court for the Middle District of Tennessee and Judge Mashburn assigned to these jointly administered Cases.

2.16    "Creditor" shall have the meaning defined in §101(10) of the Code.

2.17    "Date of Filing" shall mean May 6, 2016 as the date that the Debtors filed their Chapter 11 petitions that commenced these Chapter 11 Cases.

2.18    "Debt" shall have the meaning defined in § 101(12) of the Code.

2.19    "Debtor(s)" shall mean the entities listed in Section 1.01 with the status of and rights conferred to a debtor-in-possession by §1107 of the Code.

2.20    "Distribution" means any distribution provided for in this Plan by the Debtors to holders of Allowed Claims in full or partial satisfaction of such Allowed Claims.

2.21    "Effective Date Conditions" shall mean, collectively, the following: (a) a sale of the Whitehall Facility acceptable to HFS (i) has been approved by the Court and has closed, and (ii) HFS has received a cash payment at closing in the amount of at least $21,000,000; (b) the sale of Shady Lawn under terms acceptable to the Debtors, the Committee and HFS has closed, HFS has received a cash payment at closing in the amount of at least $3,500,000, and the Debtors have received at least $3,700,000 to provide funding for the Plan; and (c) the Debtors have received funding of net loan proceeds at least in the amount $1,800,000 from the subordinated loan to Debtor Vanguard Healthcare, LLC in accordance with the terms of an order acceptable to HFS approving that loan.

2.22    "Effective Date of the Plan" shall mean the later of (i) the first business day of the second full month following the Confirmation, (ii) the first business day after an appeal of an order confirming this Plan has become final and unappealable; and (iii) the date each of the Effective Date Conditions has been satisfied, *provided* that, at any time that all of the Effective Date Conditions have been satisfied, the Debtors may designate an earlier Effective Date of the Plan by filing written notice thereof in the Cases and serving such notice on all affected creditors and parties in interest, and *provided* further, that the Effective Date shall not be extended beyond February 1, 2018.

2.23    "Facility" shall mean the patient care facilities operated by the Debtors.

2.24    "HFS" shall mean Healthcare Financial Solutions, LLC, a Delaware limited liability company.

2.25    "HFS Loan Obligations" shall mean, collectively, all obligations of the Debtors and other borrowers and credit parties under the Revolving Loan Documents and the Term Loan Documents.

2.26    "Interest Rate" shall mean a fixed rate of six percent (6%) per annum.  If this rate is not approved by the Court at Confirmation, the applicable rate under the Plan shall be the rate determined to be allowable by the Court.

2.27    "Interests" shall mean the equity interests in the Debtors.

2.28    "Master Service List" shall mean the U.S. Trustee, the Committee, the Patient Care Ombudsman, and the holders of Secured Claims, and their counsel.

2.29    "Madison Loan Guaranty" shall mean that certain Holdings Guaranty dated as of April 30, 2013, as amended from time to time, executed by Debtor Vanguard Healthcare, LLC, as guarantor.

2.30 "Non-Debtor Borrowers" shall mean the entities that are obligated on the HFS Loan Obligations as borrowers or guarantors and did not file Chapter 11 petitions with the Debtors, including the entities who are the owners of the real property where the Facilities are located.

2.31 "Patient Care Ombudsman" shall mean Laura E. Brown, State Long-Term Care Ombudsman, TN Commission on Aging and Disability, 502 Deaderick Street, 9th Floor, Andrew Jackson Building, Nashville, TN 37243-0860, pursuant to Appointment dated May 31, 2016 (Docket No. 112).

2.32 "Plan" shall mean this Chapter 11 Plan as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

2.33 "Priority Claim" shall mean a Claim that is entitled to priority under §507.

2.34 "Property" shall mean all assets in which any Debtor has an interest as of the Effective Date of the Plan..

2.35 "Pro Rata" means the proportion that (a) an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class, or (b) Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under this Plan.

2.36 "Reorganized Debtor" shall mean each of the Debtors listed in Section 1.01 after the Effective Date of the Plan, with the exception of Whitehall OpCo, LLC

2.37 "Restructured HFS Loan" shall mean the amended and restated loan consolidating the Revolving Loan, the Term Loan and related obligations, which shall be payable by the Reorganized Debtors, the other Restructured Loan Borrowers, and the other credit parties under the terms and conditions of the Restructured HFS Loan Documents.

2.38 "Restructured HFS Loan Documents" shall mean the credit agreement and all related loan and security documents, in form and content acceptable to HFS in its sole discretion, required by HFS to evidence and secure the Restructured HFS Loan and the terms and conditions thereof.

2.39 "Restructured Loan Agent" shall mean the agent for the lenders under the Restructured HFS Loan Documents. On the Effective Date of the Plan, HFS will be the initial Restructured Loan Agent.

2.40 "Restructured Loan Borrowers" shall mean the borrowers under the Restructured HFS Loan Documents.

2.41 "Restructured Loan Lender" shall mean, collectively, all lenders from time to time under the Restructured HFS Loan Documents. On the Effective Date of the Plan, HFS will be the sole Restructured Loan Lender.

2.42   "Revolving Loan" shall mean, collectively, the revolving credit facility loans and related obligations owing to HFS by the operating company Debtors and Vanguard Healthcare, LLC pursuant to the Revolving Loan Documents.

2.43   "Revolving Loan Documents" shall mean that certain Credit Agreement dated as of July 31, 2012, as has been amended from time to time, among the fifteen (15) operating company Debtors, as borrowers, Debtor Vanguard Healthcare, LLC, the lenders signatory thereto, and HFS (as assignee of General Electric Capital Corporation), as administrative agent, and all related loan and security documents.

2.44   "Secured Claim" shall mean a Claim that is a "secured claim" either under the terms of the Plan or pursuant to §506.

2.45   "Term Loan" shall mean, collectively, the term loans and related obligations owing to HFS by the operating company Debtors, the Non-Debtor Borrowers, and Vanguard Healthcare, LLC pursuant to the Term Loan Documents.

2.46   "Term Loan Documents" shall mean that certain Credit Agreement dated as of July 29, 2011, as has been amended from time to time, among the operating Debtors, the Non-Debtor Borrowers, Debtor Vanguard Healthcare, LLC, the lenders signatory thereto, HFS (as assignee of General Electric Capital Corporation), as administrative agent, and all related loan and security documents.

2.47   "Unsecured Claim" shall mean a Claim that is not otherwise a Secured Claim or a Priority Claim.

2.48   "Whitehall Facility" shall mean the Facility known as Whitehall Boca Raton located at 7300 Del Prado South, Boca Raton, FL  33422, which is owned by non-Debtor WHJ Limited Liability Partnership and operated by Debtor Whitehall Opco, LLC.


# ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.01   The following Classes shall apply to the Case of Elderscript Services, LLC, Case No. 16-03306:

Class 1.    The Secured Claims of Healthcare Financial Solutions, LLC

Class 2.    The Secured Claim of AmerisourceBergen.

Class 3.    The Claims asserted by the United States on behalf of the Department of Health and Human Services and the State of Tennessee on behalf of TennCare, a Division of Health Care Finance & Administration ("Government Entities").

Class 4      The Claims asserted for damages from personal injuries or wrongful death that are covered by the Debtors' insurance policy with BHC-LTC Insurance Ltd.

Class 5      Unsecured Claims not otherwise in a Class herein

Class 8.      The Interests in Elderscript Services, LLC held by Vanguard Healthcare, LLC

3.02    The following Classes shall apply to the Cases of the following Debtors:

Boulevard Terrace, LLC, Case No. 16-03302
Glen Oaks, LLC, Case No. 16-03310
Vanguard of Manchester, LLC, Case No. 16-03317

Class 1.      The Secured Claims of Healthcare Financial Solutions, LLC

Class 3.      The Claims asserted by the United States on behalf of the Department of Health and Human Services and the State of Tennessee on behalf of TennCare, a Division of Health Care Finance & Administration ("Government Entities").

Class 4      The Claims asserted for damages from personal injuries or wrongful death that are covered by the Debtors' insurance policy with BHC-LTC Insurance Ltd.

Class 5      Unsecured Claims not otherwise in a Class herein

Class 8.      The Interests in each Debtor held by Vanguard Healthcare, LLC

3.03    The following Classes shall apply to the Cases of the following Debtors:

Aurora Australis, LLC, Case No. 16-03300
Eldercare of Jackson County, LLC, Case No. 16-03308
Palace RBS, LLC, Case No. 16-03312
Shady Lawn, LLC, Case No. 16-03313
Vanguard of Ashland, LLC, Case No. 16-03314
Vanguard of Church Hill, LLC, Case No. 16-03315
Vanguard of Ripley, LLC, Case No. 16-03319
Vicksburg Convalescent, LLC, Case No. 16-03321
Whitehall OpCo, LLC, Case No. 16-03322

Class 1.      The Secured Claims of Healthcare Financial Solutions, LLC

Class 4          The Claims asserted for damages from personal injuries or wrongful death that are covered by the Debtors' insurance policy with BHC-LTC Insurance Ltd.

Class 5          Unsecured Claims not otherwise in a Class herein

Class 8.          The Interests in each Debtor held by Vanguard Healthcare, LLC

3.04      The following Classes shall apply to the Case of Vanguard Healthcare, LLC, Case No. 16-3296

Class 1.          The Secured Claims of Healthcare Financial Solutions, LLC

Class 3.          The Claims asserted by the United States on behalf of the Department of Health and Human Services and the State of Tennessee on behalf of TennCare, a Division of Health Care Finance & Administration ("Government Entities").

Class 4          The Claims asserted for damages from personal injuries or wrongful death that are covered by the Debtors' insurance policy with BHC-LTC Insurance Ltd.

Class 6.          Certain Claims that are subordinated to the Claims of HFS.

Class 7:          The Claims that are not included in Class 6 and for which liability is limited to Vanguard Healthcare, LLC, Vanguard Healthcare Services, LLC, and/or Vanguard Financial Services, LLC

Class 8.          The Interests in Vanguard Healthcare LLC

3.05      The following Classes shall apply to the Case of Vanguard Healthcare Services, LLC, Case No. 16-03297

Class 3.          The Claims asserted by the United States on behalf of the Department of Health and Human Services and the State of Tennessee on behalf of TennCare, a Division of Health Care Finance & Administration ("Government Entities").

Class 4          The Claims asserted for damages from personal injuries or wrongful death that are covered by the Debtors' insurance policy with BHC-LTC Insurance Ltd.

Class 7:          The Claims that are not included in Class 6 (as to Vanguard Healthcare, LLC) and for which liability is limited to Vanguard Healthcare, LLC, Vanguard Healthcare Services, LLC, and/or Vanguard Financial Services, LLC

Class 8.          The Interests in Vanguard Healthcare Services, LLC held by Vanguard Healthcare, LLC

3.06    The following Classes shall apply to the Case of Vanguard Financial Services, LLC, Case No. 16-03298

> Class 3.        The Claims asserted by the United States on behalf of the Department of Health and Human Services and the State of Tennessee on behalf of TennCare, a Division of Health Care Finance & Administration ("Government Entities").

> Class 4        The Claims asserted for damages from personal injuries or wrongful death that are covered by the Debtors' insurance policy with BHC-LTC Insurance Ltd.

> Class 7:        The Allowed Claims that are not included in Class 6 (as to Vanguard Healthcare, LLC) and for which liability is limited to Vanguard Healthcare, LLC, Vanguard Healthcare Services, LLC, and/or Vanguard Financial Services, LLC

> Class 8.        The Interests in Vanguard Financial Services, LLC held by Vanguard Healthcare, LLC

# ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND U.S. TRUSTEES FEES

4.01    Administrative Expense Claims.    Administrative Expenses are not in a class defined herein.  Except as otherwise provided under the Plan, each holder of an Administrative Expense allowed under § 503 of the Code and timely filed by the Administrative Expense Bar Date or incurred by the operating Debtors in the ordinary course of business will be paid in full at the later of (i) the time that the expense has been approved by the Court by a final order, (ii) the due date incurred in the ordinary course of business (for Administrative Expenses incurred in the ordinary course of business by an operating Debtor), (iii) upon such other terms as may be agreed upon by the holder of the Claim, or (iv) the Effective Date of the Plan.

4.02    Priority Claims.    Priority Claims that are Allowed Claims under §507(a) will be paid in full on the Effective Date of the Plan, *provided* Allowed Claims under §507(a)(8) and secured tax claims will be paid over a period ending not later than five (5) years after the Date of Filing  with interest accruing at the applicable federal rate.

4.03    United States Trustee Fees.    All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the Case is closed, dismissed, converted to another chapter of the Code, or until a final decree is entered by the Court..

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

5.01    Claims and Interests in a Class specified in Sections 3.01 to 3.04 in Article III above shall be treated as follows:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Healthcare Financial Services ("HFS") | Impaired | The Claims held by HFS shall constitute Allowed Claims as provided below, including the HFS Loan Obligations which shall be repaid in full under the terms and conditions of the Restructured HFS Loan2 as described below.<br><br>1.    Loan Amount.    The initial principal amount of the restructured loan (the "Restructured HFS Loan") shall be the amount equal to the sum of (a) the aggregate amount of all HFS Loan Obligations owing under the Revolving Loan Documents and the Term Loan Documents as of the Effective Date of the Plan, except for (i) the Amendment Fees owing under the Revolving Loan Documents and the Term Loan Documents (which shall be paid as provided below), and (ii) the HFS Fee Payment Amount (defined below), which shall be paid to HFS on the Effective Date, plus (b) the amount of the Commitment Fee.<br><br>The "HFS Fee Payment Amount" means the amount equal to the amount of professionals fees and costs incurred by HFS from and after August 29, 2017 relating to disputes or litigation between HFS and either Debtors or the Committee regarding Debtors' use of cash collateral (or the terms of any cash collateral order), Debtors' plan of reorganization, or any other issues adverse to HFS. For the avoidance of doubt, Debtors shall pay to HFS the HFS Fee Payment Amount on the Effective Date of the Plan, and the amount of all unreimbursed professional fees and costs incurred by HFS in excess of the HFS Fee Payment Amount shall be included in the initial principal amount of the Restructured HFS Loan.<br><br>2.    Lender under Restructured HFS Loan. The Restructured Loan Lender under the Restructured HFS Loan shall be the same as the lender under the Term Loan Documents, and the Restructured Loan Agent under the Restructured HFS Loan shall be the same as the administrative agent under the Term Loan Documents. As of the Effective Date of the Plan, HFS will be the sole Restructured Loan Lender and the Restructured Loan Agent.<br><br>3.    Borrowers under Restructured HFS Loan. The borrowers |

---

2 The form of the primary Restructured HFS Loan Documents will be filed with the Court separately at least one week prior to the Confirmation Hearing.

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| | | under the Restructured HFS Loan (*i.e.*, the Restructured Loan Borrowers) shall include all borrowers under both the existing Term Loan and the existing Revolving Loan and shall include, as applicable, those entities in their capacity as Reorganized Debtors under this Plan.<br><br>4.    <u>No Advances</u>. The Restructured Loan is fully funded and there is no commitment by HFS to provide any additional funding. Accordingly, the Restructured Loan Borrowers shall not be eligible to request, and the Restructured Loan Agent and the Restructured Loan Lender shall have no obligation to fund, any advances under the Restructured HFS Loan.<br><br>5.    <u>Facilities</u>. As of the Effective Date of the Plan, the Restructured Loan Borrowers shall continue to own and operate the same skilled nursing Facilities that they owned and operated as of the Date of Filing, except for (i) the Facilities owned by Vanguard of Crestview, LLC and Vanguard of Memphis, LLC (which have been sold), (ii) the Whitehall Facility after it is sold or transferred prior to the Effective Date of the Plan in a transaction or transactions either acceptable to HFS or provided in this treatment of Class 1 Claims, and (iii) the Shady Lawn Facility after it is sold or transferred prior to the Effective Date of the Plan pursuant to terms acceptable to Debtors and HFS<br><br>6.    <u>Non-Default Interest Rate</u>. The Restructured HFS Loan shall bear interest at a floating rate calculated using a spread (the "<u>Spread</u>") over 90-day LIBOR, subject to a floor. The Spread shall be 425 bps, and a floor of 50 bps.<br><br>7.    <u>Term/Maturity Date</u>. The term of the Restructured HFS Loan shall be 36 months after the Effective Date of the Plan. All obligations owing by the Restructured Loan Borrowers under the Restructured HFS Loan Documents shall be due and payable in full on the maturity date. If a default or event of default under the Restructured HFS Loan Documents has not occurred, and the Extension Condition (defined below) is satisfied when the Restructured Loan Borrowers seek to exercise an extension option, the Restructured Loan Borrowers shall have (i) an option to extend the maturity of the Restructured HFS Loan until 48 months after the Effective Date of the Plan (at a non-default interest rate with a Spread of 475 bps, and a floor of 50 bps), and (ii) a further option to extend the maturity of the Restructured HFS Loan until 60 months after the Effective Date of the Plan (at a non-default interest rate with a Spread of 525 bps, and a floor of 50 bps). The "<u>Extension Condition</u>" shall mean the satisfaction of the following |

| Class | Impairment | Treatment |
|-------|------------|-----------|
| | | financial covenants (based on updated appraisals of Facilities then owned by the Restructured Loan Borrowers as will be detailed in the Restructured HFS Loan Documents): (i) a LTV of no more than 65%; and (ii) a total debt to value of no more than 75%.<br><br>8.    <u>Repayment</u>.  All obligations under the Restructured HFS Loan Documents shall be due and payable in full on the earlier of the maturity date, or acceleration after occurrence of an event of default as provided in the Restructured HFS Loan Documents.<br><br>9.    <u>Monthly Payments</u>.  The Restructured HFS Loan Documents shall provide for monthly principal payments computed on the basis of a 25-year amortization schedule with an assumed interest rate of 5.25%.  (If the Restructured Loan Borrowers opt to extend the maturity date, principal payments shall be recalculated by HFS based on assumed interest rates of 5.75% and 6.25%, as applicable for the particular extension). Interest payments shall be computed on the basis of the actual number of days in the year divided by a 360-day year (*i.e.,* Actual/360).  Payments of principal and interest (in arrears) shall be due and payable on the first day of each month.<br><br>10.    <u>Fees</u>.  Fees with respect to the Restructured HFS Loan shall include (i) the Commitment Fee in an amount equal to 0.5% of the initial principal amount of the Restructured HFS Loan (for purposes of this calculation only, excluding the Commitment Fee); (ii) a collateral monitoring fee equal to $150 per Facility per month, payable monthly; and (iii) an exit fee ("<u>Exit Fee</u>") equal to the dollar amount of all unpaid Amendment Fees owing under the Revolving Loan Documents and the Term Loan Documents (which total $1,366,713.93).  The Commitment Fee shall be fully earned as of the Effective Date of the Plan, and shall be included in the initial principal amount of the Restructured HFS Loan.  The Exit Fee is subject to reduction as follows if all obligations owing under the Restructured HFS Loan Documents are indefeasibly paid in full to Restructured Loan Lender by the following times: (x) all obligations indefeasibly paid in full within the first 12 months of the loan term - 2/3 of the Exit Fee not payable; and (y) all obligations indefeasibly paid in full within the first 24 months of the loan term - 1/3 of the Exit Fee not payable.  If all obligations owing under the Restructured HFS Loan Documents are not indefeasibly paid in full within the first 24 months of the loan term, the full amount of the Exit Fee shall be due and payable on maturity or acceleration.<br><br>11.    <u>Collateral</u>.  As security for the Restructured HFS Loan, |

Case 3:16-bk-03296   Doc 2090   Filed 10/26/17   Entered 10/26/17 10:17:28   Desc
Main Document   Page 12 of 36

| Class | Impairment | Treatment |
|---|---|---|
| | | Restructured Loan Agent, on behalf of Restructured Loan Lender, shall retain and be granted continuing first position senior liens and security interests on, and pledges of, all of the collateral securing the existing Term Loan and/or the existing Revolving Loan (and guaranties thereof) as of the Effective Date of the Plan, including, but not limited to, first position senior liens and security interests on all of the Facilities and all personal property of each Restructured Loan Borrower, under terms acceptable to HFS in its sole discretion.

12. _Eligible AR_. The Restructured HFS Loan Documents shall include a covenant that the Restructured Loan Borrowers that are operating the Facilities shall maintain a consolidated level of eligible accounts and cash deposits in deposit accounts subject to a control agreement in favor of the Restructured Loan Agent in an amount mutually acceptable to the Debtors and HFS.

13. _Sale of a Facility_. After the closing of any sale of a Facility in accordance with the release provisions stated below (not including the sale of the Crestview Facility or the Poplar Point Facility), all proceeds of accounts generated by that Facility prior to the sale and collected after the closing date shall be paid to Restructured Loan Agent and applied against the Restructured HFS Loan; _provided_, however, that, upon the sale of the Whitehall Facility and the payment of a cash payment at closing of at least $21,000,000 to HFS in compliance with the release provisions stated below, the Restructured Loan Borrowers shall be allowed to retain as working capital cash in its bank accounts and proceeds of accounts generated by the Whitehall Facility that are collected after the closing date.

14. _Release Provisions_. The Restructured HFS Loan Documents shall provide release provisions containing conditions regarding potential sales of the Facilities to third parties unrelated to the Restructured Loan Borrowers, based on the following factors (determined in a manner acceptable to the Restructured Loan Agent):

(i)     No default under the Restructured HFS Loan Documents has occurred;

(ii)    The Restructured Loan Borrowers shall make a cash payment to the Restructured Loan Agent (for the benefit of the Restructured Loan Lender) at closing of at least 80% of the gross sale proceeds, _except_ only with respect to (A) a sale of the Whitehall |

| Class | Impairment | Treatment |
|---|---|---|
|  |  | Facility, in which case the Restructured Loan Borrowers shall make a cash payment to the Restructured Loan Agent (for the benefit of the Restructured Loan Lender) at closing in an amount equal to the greater of 70% of the gross sale proceeds or $21,000,000, and (B) a sale of the Shady Lawn Facility (owned by Vicksburg PropCo, LLC), in which case the Restructured Loan Borrowers shall make a cash payment to the Restructured Loan Agent (for the benefit of the Restructured Loan Lender) at closing in an amount equal to the greater of 46% of the gross sale proceeds or $3,500,000; <br><br> (iii) The pro forma project yield following the release of such Facility does not decrease and is at least the following -- 14.0% if the sale closing is during the first 12 months after the Effective Date of the Plan, 15.0% if the sale closing is during the second 12 months after the Effective Date of the Plan, and 16.0% thereafter; and <br><br> (iv) Immediately following such proposed sale, (A) there must be at least 5 remaining Facilities securing the Restructured HFS Loan, (B) LTV of no more than 65% (based on current appraised values of remaining Facilities), (C) a prospective Fixed Charge Coverage Ratio for the remaining Facilities of at least 1.20x, and (D) the pro forma Debt Service Coverage Ratio must be greater than 1.5x (ANOI / projected debt service). <br><br> 15. Operating Leases/Management Agreements. Any amendments to the terms of the operating leases or management agreements from and after the Effective Date of the Plan must be acceptable to the Restructured Loan Agent in its sole discretion. <br><br> 16. Guarantor. All of the existing guaranties of the Revolving Loan and/or the Term Loan shall continue in effect as to the Restructured HFS Loan, and shall include, without limitation, an unconditional and unlimited guaranty of payment and performance of the Restructured HFS Loan by reorganized Vanguard Healthcare, LLC, and limited guaranties of the Restructured HFS Loan by Bill Orand and Jere Ervin (with the same dollar amount limitations as their existing guaranties). The injunction provisions provided herein in Section 9.02 shall not |

| Class | Impairment | Treatment |
|-------|-----------|-----------|
|       |           | apply to the Allowed Claims of HFS against the Non-Debtor Restructured Loan Borrowers or any guarantors of the Restructured HFS Loan.<br><br>17.    <u>Closing</u>.  The closing date of the transactions concerning the Restructured HFS Loan documented pursuant to the terms herein shall be the Effective Date of the Plan.<br><br>18.    <u>Subordinated Debt/Junior Liens</u>.  Without prior written consent from the Restructured Loan Agent (which may be withheld in the Restructured Loan Agent's sole discretion), the Restructured Loan Borrowers shall not be allowed to incur subordinated debt, and, subject to certain permitted exceptions, the Restructured Loan Borrowers shall not be allowed to encumber any of the collateral for the Restructured HFS Loan with other liens.  Except only with respect to payments to "Electing Class 6 Claims" that are allowed as provided in the treatment of Class 6 Claims below, nothing in the Plan shall affect the subordination agreements currently in place whereby certain other creditors of the Debtors have subordinated their indebtedness and liens to HFS, and such subordination agreements shall continue with respect to the Restructured HFS Loan.<br><br>19.    <u>Appraisals</u>.  The Restructured HFS Loan Documents shall provide that the Restructured Loan Agent may require new third party appraisals of each of the Facilities, performed by a third party appraiser(s) acceptable to the Restructured Loan Agent in its sole discretion, at such times as the Restructured Loan Agent may direct, and the Restructured Loan Borrowers shall cooperate fully to allow such appraisals to be conducted.  The Restructured Loan Borrowers shall be responsible for payment of all costs of such appraisals, except that, so long as no event of default has occurred, the Restructured Loan Borrowers shall not be responsible for payment of more than one appraisal per Facility in any 24 month period from and after the Effective Date of the Plan.  Notwithstanding the foregoing, the Restructured Loan Borrowers shall be responsible for payment of all costs of all appraisals conducted in connection with any request by the Restructured Loan Borrowers to exercise an option to extend the maturity of the Restructured HFS Loan.<br><br>20.    <u>Other Terms for Restructured HFS Loan</u>.  Except as may be expressly stated herein, all other terms, conditions, and requirements of the existing loan and security documents for the Revolving Loan and Term Loan will remain in effect under the Restructured HFS Loan.  The Restructured HFS Loan Documents |

| Class | Impairment | Treatment |
|---|---|---|
| | | also will include such other or additional terms as HFS shall require in its sole discretion. Among other things, the Restructured HFS Loan Documents will include the following: |

(i)      The Restructured Loan Borrowers shall maintain their existing cash management systems, with cash controls and deposit account control agreements similar to those required under the existing Revolving Loan Documents and Term Loan Documents, *provided*, however, that there shall not be any cash sweeps to the Restructured Loan Agent unless required by the Restructured Loan Agent after the occurrence of an event of default.

(ii)      Without in any way limiting the Restructured Loan Borrowers' obligations to comply with all terms of the Restructured HFS Loan Documents from and after the Effective Date of the Plan, no events of default that have occurred under the existing Revolving Loan Documents and Term Loan Documents regarding periods prior to the Effective Date of the Plan shall be considered to be events of default under the Restructured HFS Loan Documents.

(iii)      The minimum Fixed Charge Coverage Ratio ("FCCR") shall be amended to be 1.20x under all circumstances.

(iv)      The provisions in Article I of the existing credit agreements for the Revolving Loan and the Term Loan will be amended to reflect the Restructured HFS Loan structure.

(v)      The Restructured Loan Documents will provide that the Restructured Loan Agent may require field examinations, audits and similar inspections (as provided in Section 4.9 of the existing credit agreement for the Term Loan), performed by parties acceptable to the Restructured Loan Agent in its sole discretion, at such times as the Restructured Loan Agent may direct, and the Restructured Loan Borrowers shall cooperate fully to allow such examinations and inspections to be conducted. The Restructured Loan Borrowers shall be responsible for payment of all costs of such examinations and inspections, except that, so long as no event of default has occurred, the Restructured Loan Borrowers shall not be responsible for payment of

| Class | Impairment | Treatment |
|---|---|---|
| | | more than one field examination per Facility in any 12 month period from and after the Effective Date of the Plan. |
| | | (vi) The Restructured Loan Borrowers shall continue to provide to the Restructured Loan Agent borrowing base certificates for informational purposes. |
| | | (vii) The Restructured HFS Loan Documents shall not include provisions requiring a "Restructuring Advisor." |
| | | (viii) The Restructured HFS Loan Documents will provide that the Restructured Debtors' failure to perform or observe any term or covenant under the Plan, or any term or covenant of any agreement specifically adopted under the Plan (other than the Restructured HFS Loan Documents) is an additional event of default if such failure is not cured by the Restructured Loan Borrowers by the date that is thirty (30) days after written notice to the Restructured Loan Borrowers by the Restructured Loan Agent. |
| | | (ix) The Restructured HFS Loan Documents will provide that real estate tax payments for the Facilities operated by the Debtors as of the Effective Date of the Plan (not including the Whitehall Facility) that come due for tax year 2017 will be paid by application of payments (including, without limitation, payments from sale proceeds) that HFS received from the Debtors during the Cases, up to a maximum amount of $485,000, with the remainder paid by the Restructured Loan Borrowers. (The Restructured Loan Borrowers also will be required to fund a reserve through monthly reserve payments for subsequent real estate taxes under the terms of the Restructured HFS Loan Documents.) |
| | | 21. <u>Guaranty of Madison Loan</u>. The Madison Loan Guaranty shall remain in full force and effect under this Plan, and the obligations of Vanguard Healthcare, LLC under the Madison Loan Guaranty, including, but not limited to, all claims owing to HFS, are reaffirmed, shall continue to be obligations of Reorganized Debtor Vanguard Healthcare, LLC, and shall not be affected in any way by this Plan. Unless paid sooner, all obligations owing under the Madison Loan Guaranty shall be due and payable in full on the fifth anniversary of the Effective Date of |

| Class | Impairment | Treatment |
|---|---|---|
| | | the Plan.<br><br>22. The treatment of HFS' Claims as stated in this Section 5.01 shall be the only treatment of HFS' Claims and liens under this Plan. As to HFS, such treatment (including the terms and conditions of the Restructured HFS Loan Documents) shall control over any inconsistent, additional, or different provisions of this Plan (and/or any documents referenced herein); and any inconsistent, additional, or different provisions of this Plan (and/or any documents referenced herein) shall be superseded and inapplicable with respect to the treatment of HFS' Claims. Without limiting the foregoing, the injunction provisions and other provisions stated in Sections 6.01, 6.08, 6.09, 8.02, 8.06, 8.07 and 9.02 shall not apply to with respect to the claims and liens of HFS or limit in any way HFS' claims, rights and remedies under the Restructured HFS Loan Documents. |
| Class 2<br>AmerisourceBergen | Impaired | The interests of AmerisourceBergen in the accounts and inventory of Elderscript that secure its Claim is junior to the interests of HFS in that same collateral, and thus AmerisourceBergen does not hold a Secured Claim pursuant to § 506(a) and accordingly the Allowed Claim of AmerisourceBergen (for the portion that is not determined to be an Administrative Expense) is to be Allowed in the amount of $266,979.60 and paid in twelve monthly installments in the amount of $22,248.30 pursuant to the Order Granting Motion to Assume Agreement with AmerisourceBergen Drug Corporation entered May 5, 2017 (Docket No. 1471) |
| Class 3<br>Department of<br>Health and Human<br>Services and<br>TennCare | Impaired | Allowed Claims in Class 3 shall be paid by each applicable Debtor that incurred the liability in an amount equal to 100% of the Allowed Claim payable on the fifth annual anniversary of the Effective Date of the Plan. The applicable Debtor(s) shall make interim payments of interest only at the Interest Rate defined herein accruing from the Effective Date of the Plan with payments beginning on the later of (i) six (6) months following the Effective Date of the Plan, or (ii) the first day of the sixth full month following the entry of a final order allowing the Class 3 claim, and then semi-annually thereafter to maturity. Any catch up payments for interest incurred from the Effective Date of the Plan to the entry of a final order shall be evenly spread out over the semi-annual payments to the date that the full payment is due |

| Class | Impairment | Treatment |
|---|---|---|
| | | Only the specific Debtor(s) determined to be liable under a final order allowing a Class 3 claim shall be liable for such Allowed Claim, *provided*, to the extent needed to have sufficient funds to make a required payment, Vanguard Healthcare, LLC, shall advance funds from available cash flow to the extent necessary to make the required payments to this Class. |
| Class 4<br>Personal Injury<br>Claims | Impaired | Allowed Claims in Class 4 that are within the policy limits of that certain insurance provided by BHC-LTC Insurance Ltd. with the Debtors in existence as of the Date of Filing shall be paid in full by BHC-LTC Insurance Ltd. To the extent that an Allowed Claim exceeds the policy limits, the amount of the Allowed Claim that exceeds the policy limits will be paid by the Debtors in semi-annual installments in the principal amount determined by a seven (7) year amortization paid with interest accruing after the Effective Date of the Plan at the Interest Rate defined herein with the first installment beginning on the later of (i) six (6) months following the Effective Date of the Plan, or (ii) the first day of the first full month following the determination of the Allowed Claim, and then semi-annually to maturity, which shall occur on the fifth annual anniversary of the Effective Date of the Plan. All unpaid principal and interest will be due and payable at maturity (i.e., on the fifth annual anniversary of the Effective Date of the Plan).<br><br>No distributions under this Plan shall be made on account of an Allowed Claim that is payable by BHC-LTC Insurance Ltd. until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that an Allowed Claim has been paid, the applicable portion of such Allowed Claim may be expunged without an objection having to be filed with the Court and without any further notice to or action, order or approval of the Court. |
| Class 5<br>Unsecured Claims | Impaired | Class 5 shall consist of all Unsecured Claims that are not otherwise included in another Class herein. The Reorganized Debtors will make a distribution to Class 5 on the Effective Date of the Plan in the amount equal to the lesser of 25% of Allowed Class 5 Claims, or a Pro Rata share (based on the amount of Class 5 and Class 7 Claims that are Allowed Claims as of the Effective Date of the Plan) of $1.7 million , *provided* the Allowed Claim of BHC-LTC Insurance Ltd., ("BHC-LTC") and any Unsecured Claim that is not an Allowed Claim at the time of the Effective Date of the Plan will not receive any payments from this distribution. Additionally, the Allowed Claims within this Class 5 shall be paid in the amount equal to 100% percent of the |

| Class | Impairment | Treatment |
|-------|-----------|-----------|
|  |  | remaining balance of the Allowed Claim in semi-annual installments with the principal amount determined by a seven (7) year amortization paid with interest accruing from the Effective Date of the Plan at the Interest Rate defined herein. Level principal and interest payments will be made over a period of five (5) years with the first installment beginning on the later of (i) six (6) months after the Effective Date of the Plan, or (ii) the next regularly scheduled payment date for Allowed Class 5 Claims following the determination of an Allowed Claim that has not otherwise been Allowed as of the Effective Date of the Plan, and then semi-annually to the end of the five (5) year payment period. The first payment to be paid to any Allowed Claim under (ii) above will include the amount that the Allowed Claim had missed in prior payments. All unpaid principal and interest will be due and payable at maturity (i.e., on the fifth annual anniversary of the Effective Date of the Plan). |

The payment of Allowed Unsecured Claims hereunder will be allocated to each applicable Debtor that incurred the liability, *provided*, to the extent needed to have sufficient funds to make a required payment, Vanguard Healthcare, LLC shall advance funds from available cash flow to the extent necessary to make the required payments to this Class.

Upon the sale of Whitehall, the Administrative Expenses and Priority Claims in the Whitehall case, will be paid from the net proceeds remaining after the closing of the sale and the distribution of the Release payment (at least $21,000,000) to HFS and then paid to Allowed Unsecured Claims in the Whitehall case. To the extent there remain unpaid claims after this distribution is made, such Allowed Claims against the Debtor Whitehall Opco, LLC will be paid as provided within this Class 5 by Vanguard Healthcare, LLC.

Notwithstanding the previous paragraph, if the aggregate of Allowed Claims in Class 5 and/or 7 held by any Creditor for any of the Debtors is an amount equal to $500 or less or the aggregate of such Allowed Claims is an amount greater than $500 and the Creditor has elected to reduce the aggregate of its Allowed Claims to the amount of $500, then such Allowed Claims shall be paid in full, without interest, on or before six (6) months after the Effective Date of the Plan. Although the election option was originally provided with the Ballots, creditors may make an election by sending in the election form to counsel for the Debtors so that it is received on or before twenty-eight (28) days after Confirmation.

| Class 6: Claims Subordinated to Healthcare Financial Services ("HFS") | Impaired | This Class shall consist of the following Claims against Debtor Vanguard Healthcare, LLC, which are subordinated to all of the Class 1 Claims held by HFS:<br><br>1. The Claim of CCP Mustang in the amount allowed by Court order entered May 30, 2017 (Docket No. 1574) in the amount of $4,995,000.00.<br><br>2. The Claim of Kirk Hebert in the amount of $1,856,533.<br><br>3. The Claim of Toyo Jitsugyo in the amount of $702,235.<br><br>To the extent the Claims in this Class 6 are Allowed Claims, the holder shall have the option to be paid in one of the following ways,:<br><br>(a) The Allowed Class 6 Claims will be paid in the amount of 100% of the Allowed Claim plus interest accrued from the Effective Date of the Plan at the Interest Rate defined herein, *provided* that except only for certain interest payments on the Allowed Claim of Kirk Hebert to the extent provided in this subsection (a), no payments will be made on the Allowed Claims in Class 6 until all Class 1 Allowed Claims are paid in full, including amounts owing under the Madison Loan Guaranty (referred to in Paragraph 21 of Class 1 above). Notwithstanding the continuation of all subordination agreements between Kirk Hebert and HFS, HFS agrees that as long as no event of default has occurred and is continuing under the Restructured HFS Loan Documents, Vanguard Healthcare LLC make interest only payments on the Allowed Claim of Kirk Hebert accruing from the Effective Date of the Plan at the Interest Rate defined herein. Such interest payments will be made beginning six (6) months after the Effective Date of the Plan and continuing thereafter semi-annually until the Allowed Claim held by Kirk Hebert is paid in full. No interest payments shall be made at any time an event of default has occurred and is continuing under the Restructured HFS Loan Documents. If the Class 1 Allowed Claims are paid in full prior to the fifth anniversary of the Effective Date of the Plan, Vanguard Healthcare LLC shall promptly thereafter pay the Allowed Claims in Class 6 all interest then accrued to date and shall begin to make semi-annual installments of interest |

beginning as of the date that the Class 1 Allowed Claims are paid in full. All unpaid principal and interest will be due and payable on the fifth anniversary of the Effective Date of the Plan.

(b)   Alternatively, each Allowed Claim in Class 6 shall have the option to reduce its Allowed Claim to an amount equal to forty percent (40%) of the Allowed Claim, which election shall be made by written notice to the Debtors and bankruptcy counsel delivered on or before thirty (30) days prior to the Effective Date of the Plan ("Electing Class 6 Claim"). (CCP Mustang has elected this option) Notwithstanding is the continuation of all subordination agreements between the respective Class 6 creditors, including CCP Mustang and HFS, HFS agrees that, as long as no event of default has occurred and is continuing under the Restructured HFS Loan Documents, each Electing Class 6 Claim shall be paid in semi-annual installments with the principal amount determined by a seven (7) year amortization paid with interest accruing from the Effective Date of the Plan at the Interest Rate defined herein. No payments shall be made by Debtor Vanguard Healthcare, LLC at any time an event of default has occurred and is continuing under the Restructured HFS Loan Documents. The remaining amount of the Allowed Claim will be discharged effective on the Effective Date of the Plan and any obligation of William D. Orand or Jere Ervin related to the discharged amount for which any Debtor has an indemnity obligation (whether contingent or otherwise) to those officers and/or members will be released and discharged.. Level principal and interest payments on the Electing Class 6 Claim will be made over a period of five (5) years with the first installment beginning on the later of (i) six (6) months after the Effective Date of the Plan, and then semi-annually to the end of the five (5) year payment period, or (ii) the next regularly scheduled payment date for Electing Class 6 Claims following the determination of an Allowed Claim that has not otherwise been Allowed as of the Effective Date of the Plan. All unpaid principal and interest owing on the Electing Class 6 Claims will be due and payable at maturity (i.e., on the fifth annual anniversary of the Effective Date of the Plan).

In all respects, (i) the respective subordination agreements between the respective Class 6 Creditors and HFS shall remain in full force and effect and applicable with respect to the Allowed Class 6 Claims and the Allowed Claims in Class 1, and (ii) no payments or

| | | distributions of any kind shall be made at any time that an event of default has occurred and is continuing under the Restructured HFS Loan Documents. |
|---|---|---|
| Class 7— <u>Unsecured Claims Against Vanguard Healthcare, LLC, Vanguard Healthcare Services, LLC and Vanguard Financial Services, LLC</u> | Impaired | This Class shall consist of the Claims for which liability is limited to one or more of the following Debtors: <u>Vanguard Healthcare, LLC, Vanguard Healthcare Services, LLC or Vanguard Financial Services, LLC</u> (collectively referred to herein as the "Vanguard Parent Entities") other than the subordinated claims in Class 6.<br><br>The Vanguard Parent Entities will make a distribution to Class 7 on the Effective Date of the Plan in the amount equal to the lesser of 25% of Allowed Class 7 Claims or a Pro Rata share (based on the amount Class 5 and Class 7 Claims that are Allowed Claims as of the Effective Date of the Plan) of $1.7 million, *provided* the Allowed Claim of BHC-LTC Insurance Ltd., ("BHC-LTC") and any Unsecured Claim that is not an Allowed Claim at the time of the Effective Date of the Plan will not receive any payments from this distribution. Additionally, the Allowed Claims within this Class 7 shall be paid in the amount equal to 100% percent of the remaining balance of the Allowed Claim in semi-annual installments with the principal amount determined by a seven (7) year amortization paid with interest accruing from the Effective Date of the Plan at the Interest Rate defined herein. Level principal and interest payments will be made over a period of five (5) years with the first installment beginning on the later of (i) six (6) months after the Effective Date of the Plan, or (ii) the next regularly scheduled payment date for Allowed Class 7 Claims following the determination of an Allowed Claim that has not otherwise been Allowed as of the Effective Date of the Plan, and then semi-annually to the end of the five (5) year payment period. The first payment to be paid to any Allowed Claim under (ii) above will include the amount that the Allowed Claim had missed in prior payments. All unpaid principal and interest will be due and payable at maturity (i.e., on the fifth annual anniversary of the Effective Date of the Plan).<br>In making semi-annual payments to Class 7, the Reorganized Debtors agree that payments to the Allowed Class 5 Claim of the BHC-LTC will be deferred until such time that there is sufficient cash to make the required payment if the aggregate available cash with the Reorganized Debtors is insufficient to make the Class 7 required payment.<br>The payment of Allowed Unsecured Claims hereunder will be allocated to each applicable Debtor that incurred the liability, *provided*, to the extent needed to have sufficient funds to make a |

| | | |
|---|---|---|
| | | required payment, Vanguard Healthcare, LLC shall advance funds from available cash flow to the extent necessary to make the required payments to this Class<br><br>Notwithstanding the previous paragraphs, if the aggregate of Allowed Claims in Class 5 and/or 7 held by any Creditor for any of the Vanguard Parent Entities is an amount equal to $500 or less or the aggregate of such Allowed Claims is an amount greater than $500 and the Creditor has elected to reduce the aggregate of its Allowed Class 7 Claims to the amount of $500, then such Allowed Claims shall be paid in full, without interest, on or before six (6) months after the Effective Date of the Plan. Although the election option was originally provided with the Ballots, creditors may make an election by sending in the election form to counsel for the Debtors so that it is received on or before twenty-eight (28) days after Confirmation. |
| Class 8 –Interests in the Debtor | Not Impaired | The Interests in the respective Debtors will continue in the same amount as in existence as of the Date of Filing. |

## ARTICLE VI
## PAYMENT OF ALLOWED CLAIMS

6.01 <u>Distribution on Allowed Claims</u>. Distributions hereunder will be made only on Allowed Claims. If an objection to a Claim or portion thereof is filed as set forth in this Plan, no payment or distribution provided under this Plan shall be made on account of such Claim or portion thereof unless and until such disputed claim becomes an Allowed Claim. With respect only to Allowed Claims in Classes 2 through 7, inclusive, no distributions on an Allowed Claims in a Class shall be made in excess of the amount provided for under this Plan or on an earlier schedule than provided under the Plan unless all creditors holding Allowed Claims in all such Classes receive a Pro Rata share of such excess payment or such payments are approved by the Court.

6.02 <u>Settlement of Disputed Claims</u>. The Reorganized Debtors will have the power and authority to settle and compromise all disputed Claims applicable to any of the Reorganized Debtors without court approval if the dispute has not been resolved prior to the Effective Date of the Plan..

6.03 <u>Adjustment to Claims Without Objection.</u> After the Effective Date of the Plan, any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to this Plan), may be adjusted or deemed expunged by the Debtor without a Claim objection having to be filed and without any further notice to or action, order or approval of the Court.

6.04    Amendments to Claims.  On or after the Effective Date of the Plan, a Claim may not be filed or amended without the prior authorization of the Court  or the applicable Debtor, (it being understood that this provision does not prevent Class 3 from amending its Claims without prior authorization of the Court or the applicable Debtor during the course of the litigation pending in the District Court).  Absent such authorization, any new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

6.05    Distributions After Allowance.  To the extent that a disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan..

6.06    Delivery of Plan Distributions.  All distributions under the Plan on account of any Allowed Claims shall be made at the address of the holder of such Allowed Claim as set forth in the Debtors' records as of the Effective Date of the Plan, including without limitations the Schedules, unless said holder shall have filed a proof of claim, in which case the address set forth in the proof of claim shall control.  The foregoing notwithstanding, the Debtors shall honor any holder's written change of address if received at least fifteen (15) days prior to a given distribution date.  In the event that any distribution to any holder is returned as undeliverable, the Debtor shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Debtor has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided*, however, that any undeliverable or unclaimed distribution that remains unclaimed after ninety (90) days following such distribution shall be reallocated by the applicable Debtor for re-distribution for the benefit of all other holders of Allowed Claims in accordance with the Plan.

6.07    Discharge of Debts and Discharge Injunction.  **Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date of the Plan, (a) the Debtors and their property are discharged and released to the fullest extent permitted by § 1141 of the Bankruptcy Code from all Claims and rights that arose before the Effective Date of the Plan, including all debts, obligations, demands, and liabilities, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless whether (i) a proof of Claim based on such debt is filed or deemed filed, (ii) a Claim based on such debt is allowed pursuant to § 502, or (iii) the holder of a Claim based on such debt has or has not accepted the Plan; (b) any judgment underlying a Claim discharged hereunder is void; and (c) provided that there has been no default under the Plan, all persons are precluded from asserting against the Debtors or their property, whether directly or on behalf of the Debtors, any Claims discharged or to be paid hereunder based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date of the Plan.**

**Except as otherwise provided in the Plan or the Confirmation Order, and provided that there has been no default under the Plan, on and after the Effective Date of the Plan, all persons who have held, currently hold, or may hold a Claim that is discharged as provided in the preceding paragraph or is otherwise an Allowed Claim to be paid under the Plan, are permanently and completely enjoined from taking any of the following actions on account of any such Claim (the "Permanent Injunction"): (a) commencing, conducting,**

**or continuing in any manner any suit, action, or other proceeding of any kind against or affecting the Debtors, their properties, or their obligations that is inconsistent with the Plan or the Confirmation Order; (b) attaching, collecting, enforcing, levying, or otherwise recovering in any manner any award, decree, judgment, or order against or affecting the Debtors, their property, or their obligations, other than as expressly permitted under the Plan; (c) creating, perfecting, or otherwise enforcing in any manner any lien or encumbrance of any kind against or affecting property of the Debtors, other than as expressly permitted under the Plan; (d) asserting any right of recoupment, setoff, or subrogation of any kind against any obligation due to the Debtors with respect to any such discharged Claim, except as otherwise permitted by § 553 (provided, however, that this provision shall not increase or limit any recoupment right or any right to setoff mutual post-petition debts that is otherwise enforceable under applicable law); (e) acting or proceeding in any manner, in any place whatsoever, that does not comply with or is inconsistent with the provisions of the Plan, the Confirmation Order, or the discharge provisions of § 1141; and (f) taking any actions to interfere with the implementation or consummation of the Plan. The Debtors and any other person injured by any willful violation of the Permanent Injunction shall recover actual damages, including costs, expenses, and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.**

6.08    <u>Voiding of Liens</u>. Except as otherwise provided under the Plan, pursuant to §506(d), Confirmation will void all liens in excess of a Secured Claim.

6.09    <u>Exemption from Certain Taxes and Fees.</u>  Pursuant to § 1146(a) of the Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation or amendment of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by this Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any transaction occurring under this Plan.

6.10    <u>Indefeasibility of Distributions</u>.  All Distributions provided for under the Plan shall be indefeasible.

6.11    <u>Limitation on Distribution to BHC-LTC</u>.  In making required payments to any class of Allowed Claims under the Plan, the Reorganized Debtors agree that payments to the Allowed Claims of BHC-LTC in Classes 5 or 7 will be deferred until such time that there is sufficient cash to make the required payments to creditors under the Plan if the aggregate available cash with the Reorganized Debtors is insufficient to make the required payment, and if

there is a payment default under the Plan, no payments will be made to BHC-LTC on its Allowed Claims in Classes 5 or 7 until that default is cured.

# ARTICLE VII
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01     <u>Assumed Executory Contracts and Unexpired Leases</u>.  Unless otherwise subject to a motion to reject filed prior to the Effective Date of the Plan or court order rejecting a contract or lease which has been entered prior to the Effective Date of the Plan, each Reorganized Debtor assumes all existing executory contracts and/or unexpired leases executed by that Debtor prior to the Date of Filing, which assumption shall be effective as of the Effective Date of the Plan.  A listing of executory contracts and unexpired leases known to exist as of the Date of Filing is attached as Exhibit C to the Disclosure Statement.  All defaults under executory contracts and unexpired leases that remain in existence as of the Effective Date of the Plan shall be deemed cured unless otherwise provided herein or by Court order.

Specifically included, but not limited to, in the assumption of executory contracts will be (i) the existing provider agreements with the Debtors and the Centers for Medicare & Medicaid Services and the relevant state Medicaid authorities further described in Docket No. 393 and assumed by Order entered September 12, 2016 (Docket No. 487), (ii) the insurance policies with BHC-LTC Insurance Ltd. further described in Docket No. 244 and in Article II.D.ix in the Disclosure Statement, (iii) the agreements with Evergreen Rehabilitation LLC ("Evergreen") further described in Docket No. 174 and in Article II.D.ix and Exhibit C in the Disclosure Statement (except for the agreement related to the Whitehall Facility), (iv) all real property leases further described on Exhibit D-1 and D-2 attached to the Disclosure Statement and the *Debtors' Omnibus Motion to Assume Unexpired Facilities Lease* filed November 30, 2016 (Docket No. 670), including leases of office space for the Debtors' management, (v) all disbursement agreements with SYSCO related entities further described in the *Debtors' Motion to Approve Settlement* filed January 4, 2017 (Docket No. 912); (vi) the agreement by and between AmerisourceBergen and Elderscript Services as further described in the Debtors' Motion to Assume AmerisourceBergen Agreement and Order Granting Motion to Assume Agreement with AmerisourceBergen Drug Corporation entered May 5, 2017 (Docket No. 1471), and (vii) any other insurance policies for coverage to any of the Debtors and all agreements, documents or instruments relating thereto that have not otherwise expired or lapsed as of the Date of Filing, (viii) any equipment leases  for copiers or other operating equipment, and (ix) all management agreements associated with each of the Debtors' Facilities.

Regarding the Evergreen contract agreements with the Debtors:  (i) on the Effective Date, in accordance with this Section 7.01, the Debtors (other than Whitehall OpCo, LLC) will assume their agreements with Evergreen, and will cure their defaults under their respective agreements by the payment in cash of all pre-petition unpaid amounts owing to Evergreen in six equal monthly installments totaling the aggregate of the amounts owed by such Debtors for services provided to the Debtors as set forth in Exhibit C to the Disclosure Statement until paid in full, which aggregate amount shall be the Allowed Claim for such Evergreen contracts; and (ii) on the Effective Date, upon the closing of the sale of the Whitehall Facility in accordance with the motion currently pending before to the Court (Docket No. 1873), in

accordance with this Section 7.01, Whitehall OpCo, LLC will reject its agreement with Evergreen and Evergreen shall have an Allowed Claim in Class 5 against Whitehall OpCo, LLC with respect to same in the respective amount set forth in Exhibit C to the Disclosure Statement, which shall be entitled to the treatment set forth herein for Class 5 creditors.

Regarding the BHC-LTC Insurance Ltd. policies, the Debtors will cure the amount due for policy year 2015 in the amount of $1,115,283 (excluding the allocated amounts owed by the sold Facilities) by payments in an amount equal to $33,176.25 per month to be applied until all past due amounts are paid in full. The premiums for all other policy years are paid in full.

Regarding the AmerisourceBergen contract, Elderscript Services will cure all past due amounts under such contract as set forth in Article V above.

Regarding all other contracts, the cure amount will be either (i) the amount listed by the Debtors on Exhibit C to the Disclosure Statement, (ii) the amount determined by the Court upon any objection to the Exhibit C to the Disclosure Statement filed by a creditor on or before the Effective Date of the Plan, (iii) the amount stipulated by the Debtors and the contract party, with consent of the Committee, or (iv) the amount determined by Court order.

Regarding unexpired real property leases, certain Debtors have real property leases listed on Exhibit D-1, attached to the Disclosure Statement. The leases associated with a Facility are further described in the discussion regarding that Facility in Section II.A in the Debtors' Disclosure Statement. The Debtors have negotiated new terms with certain third party landlords, and as of the Effective Date of the Plan will assume seven existing leases under the amended terms to be provided a least one week prior to the Confirmation Hearing. (The assumption of these agreement will not limit the specific rights expressly reserved in Section 8.05). Additionally Vanguard Healthcare leases certain office space for its operations and four other Debtors lease the real property where their facility is located. These leases are current and no cure payment is required to assume those leases. A further description of all of these leases is provided in the *Debtors' Omnibus Motion to Assume Unexpired Facilities Leases* filed November 30, 2016 (Docket No. 670).

Regarding any other insurance policies, including all insurance policies (together with all agreements, documents or instruments relating thereto, the "Insurance Contracts") issued to or providing coverage to any of the Debtors at any time, including those Insurance Contracts issued by ACE American Insurance Company, Westchester Surplus Lines Insurance Company, Federal Insurance Company, and Bankers Standard Insurance Company (together with each of their affiliates and successors, the "Chubb Companies"), all terms, conditions, rights, claims, liabilities, obligations, defenses, limitations and exclusions set forth in, or arising pursuant to the applicable Insurance Contracts shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect under the Plan, the Confirmation Order, or any document related thereto (including without limitation, any provision that purports to be preemptory or supervening, or grants an injunction or release), and shall remain in full force and effect and subject to applicable non-bankruptcy law, and the Reorganized Debtor shall be liable for all obligations thereunder regardless of when they arise and of which Debtor(s) the underlying Claim relates to without the need or requirement of any insurer including the Chubb Companies to file a proof of claim or motion for payment or allowance of any administrative

expense pursuant to § 503 of the Bankruptcy Code or other cure claim or objection to cure amount.

## ARTICLE VIII
## MEANS FOR IMPLEMENTATION OF THE PLAN

8.01    Continuation of Debtor's Operations.  Each Reorganized Debtor will take possession of its Property pursuant to § 1108 and will continue in existence without change to its corporate structure and management.

8.02    Transfer of Assets.  As of the Effective Date of the Plan and except as otherwise provided herein, all Property of each Debtor, including the Causes of Action, will be transferred to the applicable  Reorganized Debtor free and clear of all claims.

8.03    Authority to Sell Assets.  After the Effective Date of the Plan, the Reorganized Debtors may sell any Facility or asset or incur any debt without Court approval even though such sale or obligation is not incurred in the ordinary course of business, *provided* that, with respect to the sale of a Facility (i) the Reorganized Debtors are able to satisfy the conditions for obtaining a release of the Class 1 Secured Claim as provided herein in Section 5.01, and (ii) if, at the time of the sale  closing, there exists any event of default in the Plan payments to Allowed Claims held by Class 5 and Class 7 Creditors, the sale shall not close sooner than forty-five (45) days after the Reorganized Debtors provide written notice of the proposed sale and the anticipated use of proceeds therefrom to any such Creditors that have requested written or electronic notice as provided  in Section 8.05.

8.04    Management of Reorganized Debtors.  The Reorganized Debtors will continue to be managed by Vanguard Healthcare Services, LLC with financial and employee benefit services provided by Vanguard Financial Services, LLC and Vanguard Healthcare Employee Benefits Plan, LLC.   William D. Orand will continue to be the Chief Executive Officer of Vanguard Healthcare, LLC, and John T. Fick will continue to be the Chief Financial Officer under the same terms existing at the Date of Filing.  The salary and benefits for Orand will not increase until the Allowed Claims in Classes 5 and 7 are paid in full.  Additionally, equity holders will not receive any  direct  or  indirect  distributions  on  Vanguard  Healthcare,  LLC  or  BHC-LTC membership interests until all Claims in Classes 5 and 7 are either paid in full or disallowed, *provided* distributions to pay actual tax liabilities of the members caused by their ownership interest in the Debtors may be made as recommended by the Debtors' tax accountants..

8.05    Unsecured Creditors' Committee; Certain Reserved Rights.  Upon the Effective Date of the Plan, the Committee will terminate as to all of the Cases, *provided* the Committee will remain in effect for the Vanguard of Crestview and Vanguard of Memphis Chapter 11 cases until a liquidation plan is confirmed in those cases and the membership of the Committee may change as appropriate and approved by the U.S. Trustee to include creditors of those Debtors.

After the Effective Date of the Plan and upon receipt of a written or electronic request, the Reorganized Debtors shall provide periodic financial reports and any notices of default to any creditor holding  an Allowed Claim to be paid under the Plan

No party shall have the right to contest or challenge the nature or validity of any of the Facility leases that are assumed in accordance with this Plan, except only as stated in this Section 8.05. During any period in which there is an uncured event of a default in the Plan payments with respect to Allowed Claims held by holder of Unsecured Claims, and if during that period (i) a sale of a Facility by a Reorganized Debtor that has been approved by HFS has closed, and (ii) the Restructured Loan Agent, on behalf of the Restructured Loan Lender, has received a cash release price at closing in an amount agreed to by the Restructured Loan Agent, then any holder of an Allowed Claim in Class 5 or Class 7 may contest or challenge the nature or validity of the applicable Facility lease assumed pursuant to this Plan solely as necessary to claim that excess sale proceeds from that Facility should be paid to holders of Unsecured Claims rather than to the applicable purported landlord of such Facility (with any such contest or challenge having no effect on the remaining Facility leases).

In all events, whether in any re-opened Cases or otherwise, the Reorganized Debtors shall not seek (or support any other person in seeking) to change, limit or modify the treatment of the Class 1 Claims held by HFS, the terms of the Restructured HFS Loan Documents (other than with the prior written consent of HFS), or HFS's rights, powers, and remedies under the Restructured HFS Loan Documents or the Restructured HFS Loan., including, but not limited to, any request for any stay or injunction on the exercise of HFS's rights and remedies.

8.06    <u>Direction to Parties</u>.    From and after the Effective Date of the Plan, the Debtors may apply to the Court for an order directing any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property contemplated by or necessary to effectuate this Plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of this Plan, pursuant to § 1142(b) of the Code.

8.07    <u>Default Under Plan</u>.    The Confirmation shall effect a cure of any existing default under a Debt, and except as provided otherwise under the Plan regarding the treatment of a specific Class hereunder, an event of default as to any Claim after Confirmation shall exist (i) as to any holder of a Claim in Classes 2, 3, 4, 5, 6 or 7 only if the Reorganized Debtor fails to make monetary payment when due under the Plan to an Allowed Claim within that Class within thirty (30) days of the date that payment is due, and (ii) as to Class 1, only upon an Event of Default specified for Class 1.

8.08    <u>Notice</u>.    Unless otherwise directed by any party in writing, notice of default shall be sufficient on the date of delivery by email or place of business as follows:

Vanguard Healthcare LLC
Attn: William D. Orand
Six Cadillac Dr., Suite 310
Brentwood, TN 37027
borand@vanguardhc.com

With a copy to:

William L. Norton III

Bradley
1600 Division St., Suite 700
Nashville, TN 37203
bnorton@bradley.com


John A. Harris
Quarles & Brady LLP
Two North Central Ave.
Phoenix, AZ 85004-2391
john.harris@quarles.com


Glenn B. Rose
Paul G. Jennings
Bass Berry & Sims
150 Third Ave. South, Suite 2800
Nashville, TN 37201
grose@bassberry.com
pjennings@bassberry.com

## ARTICLE IX
## EXCULPATION AND INJUNCTION PROVISIONS

9.01  **Exculpation.**  **Except as otherwise specifically provided in this Plan, the Debtors and their officers, members, employees, professionals and directors, and Committee members and professionals employed by the Debtors or Committee are hereby released and exculpated from any claim or liability for any claim related to any act or omission derived from, based upon, related to or arising from the Debtors' in or out-of-court restructuring efforts, the Cases, the liquidation of assets, formulation, preparation, dissemination, negotiation, filing, confirmation, approval, implementation or administration of the Plan, the Disclosure Statement, the property to be distributed under this Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, .except for gross negligence or willful misconduct. The Debtors (and respective affiliates, agents, directors, officers, employees, advisors and attorneys) have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.**

9.02  **Injunction. Provided that there is no default under the Plan and except to the extent that stay relief has been granted by Court order entered prior to the Effective Date of the Plan, each holder of a Claim shall be temporarily precluded from asserting against any of the Reorganized Debtors, the Non-Debtor Borrowers, each of their respective officers, directors, members, successors and assigns or any insurance company that has insured such Claim or any insurance policy alleged to cover such Claim, and each**

of their assets and properties, any claims or interests based upon any document, instrument, guaranty, or any act or omission, transaction or other activity of any kind or nature that relates to a Claim to be paid under the Plan until either there is a default under the Plan or the Allowed Claim is paid in full pursuant to the terms of the Plan, *provided however, that nothing herein shall operate as an injunction or stay of any action, lawsuit, or effort (i) to enforce or collect upon any cause of action or liability against the Reorganized Debtors that arose after the Effective Date of the Plan, or (ii) to pursue a non-guaranty claim against a non-Debtor for a cause of action that is not based on a guaranty of a Claim being paid under the Plan.   For the avoidance of doubt, the pending actions filed by the United States and the State of Tennessee in district court (Case No. 3:16-cv-02380) and the pending actions against William D. Orand and Jere Ervin filed by CCP Mustang shall not be enjoined.**

**9.03**    **Term of Injunctions or Stays.**  **Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Cases pursuant to §§ 105 or 362 of the Code or any order of the Court in effect on Confirmation (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date of the Plan.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

## ARTICLE X
## GENERAL PROVISIONS

10.01  Withdrawal of Plan.  At the option of any Debtor, this Plan may be withdrawn as it pertains to that Debtor at any time prior to Confirmation.  Such option shall be exercised by filing with the Court a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this Case.

10.02  Retention of Claims.  Pursuant to § 1123(b)(3)(B) of the Code, each Reorganized Debtor shall retain each and every claim, demand or Causes of Action whatsoever which the Debtor may have had power to assert immediately prior to Confirmation, except for avoidance actions under Chapter 5 of the Code, which actions shall not be pursued by any Debtor or other party-in-interest.    To the extent permitted by applicable law, these actions may be pursued by the Reorganized Debtor after Confirmation and may be commenced or continued in any appropriate court or tribunal for the enforcement of same.

10.03  Modification of the Plan.   The Debtors may propose amendments or modifications of this Plan at any time prior to Confirmation with leave of the Court.  After Confirmation, the Debtors, with approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the order of confirmation in such a manner as may be necessary to carry out the purposes and effect of this Plan.  The foregoing provisions of this paragraph do not limit the ability of any party to modify the Plan under § 1127 and applicable rules.

10.04  Closing of Case.  As of the Effective Date of the Plan and the commencement of payments pursuant to this Plan, these Chapter 11 estates will be deemed to be fully administered and the Debtors may close each Case upon the filing of a final accounting and a motion for a

final decree as required under Bankruptcy Rule 3022. Notwithstanding the closing of the Cases and the entry of a final decree, the Debtors may reopen any of the Cases to resolve a matter for which jurisdiction of the Court is reserved hereunder. No additional fees shall be due to reopen any of the Cases based upon an alleged violation of the terms of the discharge under § 524 of the Bankruptcy Code or for any other reasons that such fees are waived under the Bankruptcy Miscellaneous Fee Schedule promulgated by the Judicial Conference of the United States effective December 1, 2016. The Debtors reserve the right to request that the Court waive or defer fees under appropriate circumstances.

  10.05 <u>Continuing Jurisdiction of the Court</u>. Notwithstanding the entry of a final decree, the Court shall retain jurisdiction to the extent allowed by law in the implementation of the Plan and not inconsistent with prior orders entered during this case, which shall include jurisdiction over the following matters:

    (a) Hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Code;

    (b) Hear and determine all disputes involving the existence, nature, scope or enforcement of any exculpations, discharges, injunctions and releases granted in connection with and under this Plan;

    (c) The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan.

    (d) To enforce and interpret the terms and conditions of this Plan, including a determination of value of Property as required under the Plan, and specifically including the right of a party in interest to take action in the event of a default under this Plan.

    (e) Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtors and the Reorganized Debtors, and to impose such limitations and terms of such title, rights and powers as the Court may deem necessary.

    (f) Determination of the allowance of any Claims asserted against the Debtors for which an objection was filed before the Effective Date of the Plan, and the determination of any claims, including Causes of Action, asserted by any Debtors against any other person or entity, including but not limited to any right of any Reorganized Debtor to recover assets pursuant to the provisions of Title 11 which are retained pursuant to 8.02 herein; and .

    (g) Entry of a final decree closing these Cases.

  10.06 <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

10.07 _Binding Effect_. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

10.08 _Captions_. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

10.09 _Controlling Effect_. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Tennessee govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

Dated: September 23, 2017.

Respectfully submitted,

**Vanguard Healthcare, LLC**

**By:** _/s/ William D. Orand_
     CEO

**Vanguard Healthcare Services, LLC**

**By:** _/s/ William D. Orand_
     CEO

**Vanguard Financial Services, LLC**

**By:** _/s/ William D. Orand_
     CEO

**Aurora Australis, LLC**

**By:** _/s/ William D. Orand_
     CEO

**Boulevard Terrace, LLC**

**By:** _/s/ William D. Orand_
     CEO

**Eldercare of Jackson County, LLC**
**By:** _/s/ William D. Orand_
     CEO

**Elderscript Services, LLC**

**By:** */s/ William D. Orand*
    CEO

**Glen Oaks, LLC**

**By:** */s/ William D. Orand*
    CEO

**Palace RBS, LLC**

**By:** */s/ William D. Orand*
    CEO

**Shady Lawn, LLC**

**By:** */s/ William D. Orand*
    CEO

**Vanguard of Ashland, LLC**

**By:** */s/ William D. Orand*
    CEO

**Vanguard of Church Hill, LLC**

**By:** */s/ William D. Orand*
    CEO

**Vanguard of Manchester, LLC**

**By:** */s/ William D. Orand*
    CEO

**Vanguard of Ripley, LLC**

**By:** */s/ William D. Orand*
    CEO

**Vicksburg Convalescent, LLC**

**By:** */s/ William D. Orand*
    CEO

**Whitehall OpCo, LLC**

**By:** */s/ William D. Orand*
        CEO


*/s/ William L. Norton III*
William  L. Norton III
BRADLEY
1600 Division  St., Suite  700
Nashville,  TN  37203
Fax: 615-252-2397
bnorton@bradley.com
*Attorneys for Debtors*